**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
CRAIG J. CHILLEMI,

     Plaintiff,

   -against-

THE TOWN OF SOUTHAMPTON, ERIC
SICKLES, JAMES KIERNAN, and THOMAS
TULLY

     Defendants.
---------------------------------------------------------X

          **MEMORANDUM OF**
          **DECISION AND ORDER**
          12-CV-3370 (ADS)(ETB)

<u>**APPEARANCES:**</u>

**RUSKIN MOSCOU FALTISCHEK PC**
*Attorneys for the Plaintiff*
East Tower, 15th Floor
1425 Rexcorp Plaza
Uniondale, NY 11556
   By: Thomas Anthony Telesca, Esq., Of Counsel

**DEVITT SPELLMAN BARRETT, LLP**
*Attorneys for the Defendants*
50 Route 111
Smithtown, NY 11787
  By: Jeltje DeJong, Esq.,
   Kelly E. Wright, Esq., Of Counsel

**SPATT, District Judge**.

  The Plaintiff Craig J. Chillemi ("Chillemi" or the "Plaintiff") brought the instant action

against the Defendants for violations of his constitutional rights to freedom from unreasonable

searches and seizures, freedom from compelled self-incrimination, and the right to equal

protection, all stemming from an alleged false arrest on July 8, 2009, and his alleged subsequent

false imprisonment. He asserts causes of action pursuant to 42 U.S.C. §§ 1983 and 1985(3),

including a Section 1983 false arrest claim. Presently before the Court is a motion to dismiss

filed by the Defendants.  For the reasons set forth below, the motion is granted in part and denied in part.

## I.  BACKGROUND

The Plaintiff started dating a woman named Tara Tully in or around December 2006. Tara is the daughter of the Defendant Thomas Tully ("Detective Tully"), who was employed by the Southampton Town Police Department ("STPD") as a detective about the time of the events in question.   Detective Tully was also a member of the now-disbanded Street Crimes Unit.

On or about August 5, 2007, the Plaintiff was arrested by the STPD's Street Crimes Unit. Chillemi was staying at a house that he neither owned nor rented, along with five other persons, including Tara Tully.  The house was raided by the Street Crimes Unit, which included the Defendant Lieutenant James Kiernan and Defendant Officer Eric Sickles as members.  During the raid, it is alleged that Officer Sickles taunted the Plaintiff about his relationship with Tara Tully and allegedly propositioned her for a date.  Tara Tully was removed from the scene by Lieutenant Kiernan and was not charged.  However, the Plaintiff, along with the other persons at the scene, were arrested and charged.  Chillemi pled guilty to the sale of a controlled substance and criminal possession of a controlled substance in the third degree.  On or about March 28, 2008, he was sentenced to four years in prison.

The Complaint states that in or about April 2009, the Plaintiff was paroled and entered a work release program through the Lincoln Correctional Facility in New York City.  In his memorandum in opposition to the Defendants' motion to dismiss, the Plaintiff now claims that he was not paroled but "furloughed" from prison to enter the work release program.  In any event, the Plaintiff participated in this program from April 2009 through July 2009, while continuing to date Tara Tully.  According to the Complaint, this relationship incensed her father

Detective Tully as well as Office Sickles, who was romantically interested in Tara Tully.  Thus, the Complaint states that upon information and belief, the Defendants conspired to end the relationship under pretense and color of law.

On July 8, 2009, the Plaintiff was riding in the passenger seat of a rental car being driven by Tara Tully.  They both arrived at a friend's home and while the Plaintiff was standing in the driveway, Officer Sickles arrived at the residence in an unmarked police car.  Office Sickles then ticketed the Plaintiff for aggravated unlicensed operation of a motor vehicle because the Plaintiff was not permitted to drive while on work release.  The General Traffic Complaint sworn to by Officer Sickles stated that the Plaintiff was driving, but the Plaintiff claims that in fact Tara Tully was driving.  The Complaint states that this ticket was merely a pretext to illegally search the Plaintiff.

Chillemi alleges that while Officer Sickles was handcuffing him, Officer Sickles produced a small bag of cocaine without going into any of the Plaintiff's pockets.  However, Office Sickles later claimed that he found the cocaine in Chillemi's right-side pants pocket.

Consequently, Officer Sickles arrested the Plaintiff for the unlicensed operation of a motor vehicle in the third degree and criminal possession of a controlled substance in the seventh degree.  However, the Plaintiff maintains that he was neither operating a vehicle on July 8, 2009, nor in possession of any illicit drugs at the time of his arrest.  Chillemi contends in the Complaint that the charges were fabricated by Officer Sickles in concert with Lieutenant Kiernan and Detective Tully in an attempt to end the relationship between Tara Tully and Chillemi.  It is alleged that Kiernan and Detective Tully were involved in this conspiracy in that Kiernan administered the oath for the General Traffic Complaint and Misdemeanor Information signed by Officer Sickles on July 8, 2009, even though both he and Detective Tully knew the statements

3

made were knowingly false.  In this regard, the Complaint alleges that Kiernan was aware of Sickles' unconstitutional actions and consciously chose to ignore them, effectively ratifying these illicit actions.  Further, he alleges that Detective Tully knowingly acquiesced to the Plaintiff's unlawful arrest with deliberate indifference to the constitutional deprivations in his supervisory role with the STPD.

Despite the above allegations, on or about October 29, 2009, the Plaintiff agreed to a plea bargain with regard to the charges stemming from the July 2009 arrest.  The charge of criminal possession of a controlled substance in the seventh degree was reduced to a violation of unlawful possession of marijuana—neither a felony nor a misdemeanor.  The charge of aggravated unlicensed operation of a motor vehicle was reduced to facilitating aggravated unlicensed operation—a traffic infraction.  The Plaintiff was not sentenced to any jail time and a fine of $910.00 was imposed.  According to the Plaintiff, he only entered into this plea bargain because of the understanding that it would not interfere with his participation in the work release program at the Lincoln Correctional Facility.

However, on or about November 2, 2009, a hearing was conducted by a review board at the Lincoln Correctional Facility.  The review board recommended the Plaintiff's removal from the work release program based upon his convictions.  Thus, Chillemi was removed from the work release program despite his claimed satisfactory performance and the willingness of his employer—Ketty-Linda Cleaning Corp. d/b/a Malone Restoration—to allow him to return to work if he were reinstated in the work release program.  According to the Complaint, at the time of the Plaintiff's July 2009 arrest, the Defendants knew that the charges against him would result in a violation of the Plaintiff's parole (or furlough), leading to the Plaintiff's incarceration.

4

The Plaintiff was finally released from prison on or about December 31, 2010.  He claims that it was a direct result of the deprivation of his constitutional rights on July 8, 2009, that he was falsely imprisoned for the approximate three and a half months while awaiting the disposition of the July 8, 2009 charges and then an additional fourteen months in a New York State penitentiary.

The Street Crimes Unit of the STPD was disbanded in the summer of 2011.  In May 2012, Lieutenant Kiernan was suspended without pay as a result of numerous disciplinary charges.  In addition, Officer Sickles was sent to a drug rehabilitation center at an unspecified time.

On or about July 9, 2012, the Plaintiff commenced this action, asserting causes of action pursuant to 42 U.S.C. §§ 1983 and 1985(3).  On or about August 30, 2012, the Defendants filed a motion to dismiss the Complaint for failure to state a claim.

## II.  DISCUSSION

### A.  Legal Standard

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 570 (2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles.  Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. at

72 (quoting Iqbal, 129 S. Ct. at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief."  Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor.  Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).  Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)".  Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).  The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

**B.  As to the Heck Doctrine**

The Defendants first claim that the Plaintiff is barred from bringing the instant action based upon the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

As the Supreme Court has noted, "the two most fertile sources of federal-court prisoner litigation" are 42 U.S.C. § 1983 for deprivation of civil rights and the federal habeas corpus statute, 28 U.S.C. § 2254, for a prisoner held in violation of federal law.  Heck v. Humphrey, 512

U.S. 477, 480, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).  Both statutes "provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials."  Id.  They differ, however, in two important ways: (1) a prisoner must exhaust his state remedies before filing a habeas petition but need not do so before filing a section 1983 action, see id. at 480–81, 114 S. Ct. 2364, and (2) a prisoner can seek monetary damages pursuant to section 1983 but not in a habeas petition.  See id.; Preiser v. Rodriguez, 411 U.S. 475, 488, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).

Heck dealt with the precise issue of whether, "given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence."  Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir. 1999) (citing Heck, 512 U.S. at 480–90, 114 S. Ct. 2364).  The Supreme Court held as follows:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486–87, 114 S. Ct. 2364 (footnote omitted); see also Wilkinson v. Dotson, 544 U.S. 74, 81, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005) ("Heck specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not

previously invalidated) conviction or sentence." (emphasis in original)).  The Court's rationale

was based, in part, on a desire to "avoid[ ] parallel litigation over the issues of probable cause

and guilt," prevent "the creation of two conflicting resolutions arising out of the same or

identical transaction," and preclude "a convicted criminal defendant [from making a] . . .

collateral attack on the conviction through the vehicle of a civil suit."  Heck, 512 U.S. at 484,

114 S. Ct. 2364 (internal quotation marks and citations omitted).  As the Supreme Court later

elaborated, "conditioning the right to bring a § 1983 action on a favorable result in state litigation

or federal habeas serve[s] the practical objective of preserving limitations on the availability of

habeas remedies."  Muhammad v. Close, 540 U.S. 749, 751, 124 S. Ct. 1303, 158 L. Ed. 2d 32

(2004).

     Therefore, in the simplest invocation of this doctrine, courts dismiss Section 1983 claims

brought by a prisoner when that claim bears on the validity of an underlying conviction or

sentence.  See, e.g., Guerrero v. Gates, 442 F.3d 697, 703–04 (9th Cir. 2006) (holding that Heck

bars a plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy);

Amaker, 179 F.3d at 51–52 (holding that Heck applies to Section 1983 conspiracy); Perez v.

Cuomo, No. 09 Civ. 1109, 2009 U.S. Dist. LEXIS 33290, 2009 WL 1046137, at *7 (E.D.N.Y.

Apr. 20, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in

essence, a claim for damages attributable to an unconstitutional conviction. . . . Since plaintiff's

conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable

under § 1983, and must be dismissed as to all defendants[.]" (internal quotation marks and

citations omitted)); Younger v. City of N.Y., 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding

that the plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by

his plea of guilty pursuant to Heck ).

The Defendants assert that Chillemi's convictions and sentences have not been reversed, expunged, or vacated, so that he fails to state a claim under 42 U.S.C. § 1983 because it is barred by the Heck doctrine.  The Defendants point out that the Plaintiff pled guilty to the charges stemming from the July 2009 incident.  Although he was not sentenced to jail time, he was convicted and subsequently sent back to prison, and the Heck doctrine undoubtedly applies in the parole revocation context.  See Lee v. Donnaruma, 63 Fed. App'x 39, 41 (2d Cir. 2003) ("Courts have applied Heck to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside.").

However, the issue presented here is unique in that it does not present a straight forward application of the Heck doctrine.  Indeed, the Plaintiff argues that Heck does not apply to the present case because of an exception to the doctrine's applicability where no remedy of habeas corpus exists.

In Leather v. Eyck, 180 F.3d 420 (2d Cir. 1999), the Second Circuit found that because the plaintiff was not and never was in the custody of the State, he had no remedy in habeas corpus and thus should be permitted to pursue his § 1983 claim.  See id. at 424 ("Having escaped the jaws of Heck, Leather should therefore be permitted to pursue his § 1983 claim in the district court unless principles of *res judicata* or collateral estoppel preclude his suit."); see also Dallas v. Goldburg, 143 F. Supp. 2d 312, 323 (S.D.N.Y. 2001) ("persons sentenced to fines only, or who serve very brief periods of incarceration or parole, or who do not become aware of their potential constitutional claim until after their confinement has been completed, may lack a practical opportunity to seek to overturn the underlying state determinations through direct appeal and/or federal habeas corpus proceedings").

Therefore, Section 1983 remains a possible remedy when there is no other federal avenue through which to bring a claim.  This is because there is a primary concern by courts as to the practicality of effective review.  See id. at 323 (finding that the plaintiff's claim was "within the ordinary ambit of the Heck rule" because he "was in a position to seek review of the final parole revocation decision while he was in custody" but failed to do so).

Here, the Plaintiff was only assessed a fine for the charges stemming from the July 2009 incident and therefore was not in the custody of the state.  Accordingly, at first glance, it appears that this exception applies to the present case so that Chillemi has the right to bring a Section 1983 action.

However, the answer is not so clear cut so as to say that because the Plaintiff did not receive a prison sentence, the exception is warranted and the Heck doctrine is inapplicable.  This is because of the unique factual circumstances of the case.  Chillemi was in a work furlough program based on his first conviction when he was convicted for the second time.  The second conviction—the one he is presently challenging—is the reason he was expelled from the work furlough program and sent back to prison to complete his sentence for the first conviction.  The question posed to the Court then is whether the Plaintiff could have challenged the second arrest and conviction through a habeas corpus remedy.  If he could, the exception is inapplicable and the Plaintiff is barred from bringing this suit under the dictates of Heck.  On the other hand, if a habeas petition was unavailable, then the exception to Heck applies and the present suit is permissible.

As an initial matter, "[t]he Supreme Court's interpretation of the 'in custody' language in the federal habeas statute is not so narrow as to require that a prisoner be physically confined in order to challenge his sentence on habeas corpus."  Rosato v. N.Y. Cnty. Dist. Attorney's Office,

No. 09 Civ. 3742(DLC), 2009 WL 4790849, at *4 (S.D.N.Y. Dec. 14, 2009).  For example, "[a]n individual on probation or parole is 'in custody' for purpose of federal habeas corpus proceedings."  Id.  Thus, the Defendants assert that Chillemi could have filed a writ of habeas corpus at any time before and after his remand to Oneida Correctional Facility to challenge his arrest because he was "in custody" either literally or through his participation in the work release program.  However, the Defendants are conflating the two distinct arrests and sentences and consequently misunderstanding the opportunities the Plaintiff had to file a habeas corpus petition.

    The Court agrees that the Plaintiff was likely "in custody" when he was participating in the work release program.  See Earley v. Murray, 451 F.3d at 75 (directing that "[p]ost-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody' " for purposes of habeas corpus.").  Further, he certainly was "in custody" when he was remanded back to Oneida Correctional Facility.  Thus, it is likely that the Plaintiff could have pursued a habeas corpus remedy at either of those times.  However, any habeas corpus petition filed during those time periods would necessarily have to relate to the *first* conviction in March 2008, because that is the sentence that he was serving through the work release program and his time at the Oneida Correctional Facility.  While in a practical sense, the second conviction led to his removal from the work release program and necessitated him to serve the rest of his first sentence in prison, this does not mean that he could then use that confinement to pursue a habeas remedy related to an entirely different and subsequent conviction.  See Charnock v. Herbert, 60 F. Supp. 2d 91, 98 (W.D.N.Y. 1999) (explaining that "for the court to consider habeas relief, Petitioner must not only be in custody, such custody must be based on the governmental action he is attacking by way of the habeas petition.") (citing Castronova v. United

11

States Parole Comm., No. 94 Civ. 606, 1995 WL 604327, at *4 (W.D.N.Y. Aug. 29, 1995);

Carter v. Nassau County Court, No. 91 Civ. 3260, 1992 WL 79318, at *1 (E.D.N.Y. April 9,

1992) ("a person satisfies this requirement when held 'pursuant to the conviction' he attacks")).

 Thus, what is dispositive is whether the Plaintiff was "in custody" as a consequence of

the arrest and conviction he is now challenging.  There is no question that he was not, and thus

he could not pursue a habeas remedy relating to that second conviction.  For this reason, the

Heck doctrine's exception is applicable and the Plaintiff is not precluded from pursuing this

Section 1983 action.  The same conclusion applies equally to the Plaintiff's 42 U.S.C. § 1985

cause of action.  See Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) ("Heck therefore applies

with respect not only to plaintiff's § 1983 claim but also to his §§ 1981, 1985(3) and 1986

claims.").

 Therefore, the Defendants' motion to dismiss the Plaintiff's claims on the ground that

they are barred by the Heck doctrine is denied.

**C.  As to Whether the Plaintiff's Claims are Barred by His Guilty Plea**

 The Defendants argue that in addition to preclusion under the Heck doctrine, the

Plaintiff's false arrest and false imprisonment claims are also barred by his guilty plea.  The

Plaintiff acknowledges that a conviction based on a voluntary plea of guilty—even to a lesser

charge, as in the instant case—establishes probable cause, thereby precluding a subsequent claim

of false arrest and false imprisonment.  See Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir.

2010) ("Probable cause is a complete defense to any action for false arrest or malicious

prosecution in New York.").  However, he contends that if a guilty plea is not voluntary, then the

conviction is not valid and probable cause is not established for the arrest and imprisonment.

Chillemi explains in his opposition to the Defendants' motion to dismiss that his plea hearing

12

demonstrated a lack of due process, because the entire plea bargain was based on the false promise of continued work release, and the record is devoid of a proper allocution.

The Plaintiff misses the mark in that he bases his arguments upon a review of the record, urging the Court to find that this plea was not voluntary.  That is not an issue that is appropriately decided in the context of a motion to dismiss.  Esposito v. New York, No. 07 Civ. 11612, 2010 WL 4261396, at *2 (S.D.N.Y. Oct. 25, 2010) ("for purposes of a motion to dismiss, evidence is irrelevant.").  Rather, what is relevant is (1) whether the Plaintiff has adequately stated a claim for relief; and (2) whether the common law defense of conviction, if contested by the Plaintiff, precludes a Section 1983 suit at the motion to dismiss stage.

The elements of a false arrest claim require the plaintiff to establish that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) (alteration in original) (internal quotation marks and citation omitted).  The existence of probable cause to arrest "is a complete defense to an action for false arrest," id. at 852 (internal quotation marks omitted), "whether that action is brought under state law or under § 1983."  Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks and citation omitted).  In deciding whether probable cause existed for an arrest, a court assesses "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest."  Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) (citing Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)).  "The same holds true for the false imprisonment claims because, under New York law, the claim is identical to a false arrest claim . . . and the federal claim looks to the elements

13

of the state claim." Kilburn v. Village of Saranac Lake, 413 Fed. App'x 362, 363 (2d Cir. 2011) (internal quotation marks and citations omitted).

It is true that "in this Circuit, a plaintiff cannot establish any such claim [of false arrest] if he pleads guilty to a lesser offense pursuant to a plea agreement." Timmins v. Toto, 91 Fed. App'x 165, 166 (2d Cir. 2004). "Thus, the common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986).

Therefore, generally speaking, Chillemi cannot establish a constitutional violation for claims of false arrest and false imprisonment because he pled guilty to a violation of unlawful possession of marijuana and a traffic infraction in exchange for the dismissal of the other charges brought again him in New York. "An officer who arrests with probable cause cannot be liable for false arrest, and, by pleading guilty to the stipulated but lesser offense, [Chillemi] conceded that [the officers] had probable cause for all charges covered by the plea agreement." Timmins, 91 Fed. App'x at 166; see Unger v. Cohen, 718 F. Supp. 185, 187 (S.D.N.Y. 1989) ("The [New York] Court of Appeals [has] explained that proof of conviction provides a complete common law defense to a false arrest claim. This same 'conviction defense' is available against section 1983 claims premised on false arrest.").

However, unlike cases where courts have recognized this common law defense and dismissed suits because the guilty plea was uncontested, these cases do not provide guidance where the plaintiff contests the availability of the defense, as Chillemi does here. Indeed, this defense is only available if the plea is voluntary, because an invalid judgment of conviction

would not support the defense.  A plaintiff undoubtedly has the ability to rebut the conviction

defense by establishing that the conviction is invalid.  See Unger, 718 F. Supp. at 187.

Therefore, the fact of conviction is an affirmative defense to be raised by the Defendants.

The fact of conviction is not something that the Plaintiff needs to address in the complaint.  What

is relevant in opposition to a motion to dismiss is only whether the Plaintiff can establish a *prima*

*facie* case.  The fact of a plea or a conviction is not a necessary element of the Plaintiff's case in

chief.  "A plaintiff's complaint should contain allegations that support [his] claim, but a plaintiff

has no obligation to anticipate and refute potential affirmative defenses."  Rosen v. Brookhaven

Capital Mgmt., Co., Ltd., 194 F. Supp. 2d 224, 227, 228 (S.D.N.Y. 2002) ("Defendants have no

right to notice, in the complaint or otherwise, of the manner in which plaintiff may rebut

defendants' proof of an affirmative defense."); Harris v. City of New York, 186 F.3d 243, 251

(2d Cir. 1999) (holding that complaint need not anticipate statute of limitations, which is an

affirmative defense) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice &

Procedure § 1276 (2d ed. 2001)).  Rule 8(c) of the Federal Rules of Civil Procedure imposes on

the defendant the burden of pleading in its answer any matter "constituting an avoidance or

affirmative defense."  See Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d

572 (1980) (holding that defendant in civil rights case has burden of pleading defense of

qualified immunity and plaintiff has no obligation to anticipate such a defense) (citing 5 Wright

& Miller § 1276).

Once a defense is raised, the Plaintiff may rebut the Defendants' proof of affirmative

defenses.  See F.D.I.C. v. Haines, 3 F. Supp. 2d 155, 159 (D. Conn. 1997) ("A motion for

summary judgment is an appropriate mechanism to challenge an affirmative defense.").  The

Plaintiff has indicated in his opposition to this motion that his plea was involuntary so that he

seeks to rebut this defense.  However, the issue of Chillemi's guilty plea and its voluntariness is a matter for another day.  What is relevant for purposes of this motion is whether the Plaintiff has adequately pled a cause of action pursuant to Section 1983 for false arrest and false imprisonment, and the Court finds that he has done so.

Therefore, the Defendants' motion to dismiss the Plaintiff's Section 1983 claims on the ground of the Plaintiff's guilty plea and subsequent conviction is denied.

## D.  As to Whether the Plaintiff is Collaterally Estopped from Challenging His Arrest and/or Conviction

The Defendants also assert that because the Plaintiff pled guilty, and there has been no reversal or vacation of the conviction, that there is a preclusive effect of the guilty plea.

"Settled authority establishes that where . . . a state court has determined that the . . . [arrest] was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action."  DeFranco v. Town of Irondequoit, No. 06 Civ. 6442, 2009 WL 2957813, at *4 (W.D.N.Y. Sept. 11, 2009) (holding that plaintiffs who pled guilty after their motion to suppress evidence was denied were barred by collateral estoppel from re-litigating their Fourth Amendment claims under § 1983); see also Allen v. McCurry, 449 U.S. 90, 103–05, 101 S. Ct. 411, 66 L. Ed. 2d. 308 (1980) (holding that collateral estoppel applied to § 1983 claims and remanding case for a determination of whether state collateral estoppel law barred plaintiff from proceeding on a § 1983 claim for unlawful search and seizure when he had lost suppression hearing in state court); Reyes v. City of New York, No. 10–CV–1838, 2012 WL 37544, at *4 (E.D.N.Y. Jan. 9, 2012) (applying collateral estoppel to dismiss a § 1983 action where "plaintiff previously challenged his arrest in a pre-trial motion in state court, arguing the police lacked probable cause to arrest"); Mitchell v. Hartnett, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003) (holding that a plaintiff who unsuccessfully challenged the lawfulness of his

arrest at suppression hearing was barred by collateral estoppel from raising the same argument in a § 1983 action); Perlleshi v. Cnty. of Westchester, No. 98 Civ. 6927, 2000 WL 554294, at *4 (S.D.N.Y. Apr. 24, 2000) ("[W]here a claimant has had a full and fair opportunity to litigate a Fourth Amendment issue in state court, the federal court should award the state court's findings preclusive effect in accordance with that state's preclusion doctrine."); Brown v. De Fillipis, 717 F. Supp. 172, 178–79 (S.D.N.Y. 1989) (holding that collateral estoppel barred a plaintiff's § 1983 claim where plaintiff challenged his arrest in a suppression hearing, pled guilty before trial, and guilty plea was affirmed without opinion by the Appellate Division).

The Court agrees with the number of district courts in this Circuit which have held that where a state court accepts a guilty plea, there is an adjudication of the issues that may subsequently form the basis of a § 1983 action and thus collateral estoppel applies. Nevertheless, as with the common law defense of conviction, "[t]his does not mean that the legitimacy of a guilty plea cannot be challenged.  A conviction, regardless of how obtained, will be set aside if it resulted from fraud, perjury or other corrupt means." Butron v. Cnty. of Queens Police Dep't 110 Precinct, No. 94 Civ. 2675, 1996 WL 738525, at *2 (E.D.N.Y. Dec. 23, 1996). As the Plaintiff indicates his desire to contest the legitimacy of his guilty plea, the Court finds that issues of collateral estoppel cannot be determined at this time.

Therefore, the Defendants' motion to dismiss the Plaintiff's claims on the ground of collateral estoppel is denied.

**E.  As to Whether the Plaintiff's 42 U.S.C. § 1983 Claims are Timely**

Next, the Defendants argue that the Plaintiff's August 5, 2007 false arrest claim and his March 28, 2008 malicious prosecution claim are untimely.  This argument is odd in that (1) the Plaintiff has not brought a malicious prosecution claim; and (2) it appears clear to the Court that

the Plaintiff not seeking to challenge his August 5, 2007 arrest or subsequent March 28, 2008 guilty plea. The Court understands the Plaintiff's Complaint to be raising claims based upon the July 8, 2009 arrest and October 29, 2009 guilty plea. Further, the Plaintiff fails to address this contention in his opposition. In any event, the Court will address the Defendants' argument in this regard.

There is no dispute that the statute of limitations for a Section 1983 claim arising in New York is three years. Rivera v. Governor of New York, 92 Fed. App'x. 25, 26 (2d Cir. 2004); see Harris v. City of New York, 186 F.3d 243, 247–48 (2d Cir .1999) (stating that three years is the statute of limitations for a New York based Section 1983 cause of action); Okure v. Owens, 816 F.2d 45, 49 (2d Cir. 1987) (same). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." Van Wormer v. City of Rensselaer, 293 Fed. App'x. 783, 783 (2d Cir. 2008) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994)).

Here, the false arrest claim accrued on August 5, 2007, and the malicious prosecution claim accrued on March 28, 2008. The Plaintiff filed the Complaint on July 9, 2012. Thus, the Court agrees that any claims based upon the August 5, 2007 arrest or March 28, 2008 prosecution, if the Plaintiff is seeking to pursue such claims, should be dismissed as untimely. Accordingly, the Defendants' motion to dismiss these claims, if they exist, is granted.

**F.  As to Whether the Plaintiff has Stated a Claim Against the Town of Southampton**

Next, the Defendants argue that the Town of Southampton cannot be liable under Section 1983, because the Plaintiff has failed to state a claim against the Town pursuant to Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611

(1978).  The Defendant's argument is that because the Plaintiff pled guilty to lesser charges which stemmed from the arrest, the Town cannot be held liable on a failure to supervise and/or train theory.  There is one main case cited in support of this proposition—<u>Torraco v. Port Authority of New York and New Jersey</u>, 615 F.3d 129, 140 (2d Cir. 2010).

The Fourth Amendment right to be free from unreasonable seizures "includes the right to be free from arrest absent probable cause." <u>Jaegly v. Couch</u>, 439 F.3d 149, 151 (2d Cir. 2006). Thus, "the existence of probable cause is an absolute defense to a false arrest claim." <u>Id.</u> at 152. Therefore, if a court finds that there was probable cause for the arrest, a claim against the Town cannot go forward.  <u>See Torraco</u>, 615 F.3d at 140.  This is because, as the Second Circuit explained in <u>Torraco</u>, "'to hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" <u>Id.</u> (quoting <u>Wray v. City of New York</u>, 490 F.3d 189, 195 (2d Cir. 2007)).  As to the third prong, a plaintiff cannot be said to have been denied a constitutional right—to be free from arrest absent probable cause—if a court makes a finding that there was probable cause for the arrest.

However, it is not appropriate for this Court to make a determination as to whether there existed probable cause to arrest Chillemi in the context of a motion to dismiss.  The Defendants' argument as to the Plaintiff's guilty plea and its effect on municipal liability is essentially an extension of the same argument above, which the Court has already rejected.  The Plaintiff has adequately pled a cause of action pursuant to Section 1983 for false arrest and false imprisonment, and therefore the guilty plea does not require the dismissal of the claims against the Town of Southampton at this early stage of the proceedings.  If ultimately the Plaintiff is unable to rebut the defense of the guilty plea because he cannot demonstrate that his plea was

involuntary, then it will be proper at that time to address the dismissal of the claims against the Town.  That is not a finding that can be made at this juncture.

Therefore, the Defendants' motion to dismiss the claims against the Town based upon the Plaintiff's guilty plea is denied.

## G.  As to the Plaintiff's Conspiracy Claim

Finally, the Defendants raise several arguments as to whether the Plaintiff has adequately stated a conspiracy claim pursuant to 42 U.S.C. § 1985(3).

### 1. The Intracorporate Doctrine

To state a cause of action under § 1985, a plaintiff must allege "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."  Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  A plaintiff must also allege that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus."  Id. (quoting Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993)).

The Defendants argue that the intracorporate conspiracy doctrine should apply here to dismiss the Plaintiff's conspiracy claims.  Under this doctrine, a plaintiff fails to state a § 1985 conspiracy claim "if the conspiratorial conduct challenged is essentially a single act by a single corporation [or municipal entity] acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."  Dilworth v. Goldberg, No. 10 Civ. 2224, 2012 WL 4017789, at *28 (S.D.N.Y. Sept. 13, 2012) (quoting Hermann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978)); see also Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008)

20

(affirming the dismissal of a § 1985 conspiracy claim where defendants were all Southampton Police Department employees).

An exception to this doctrine exists, however, where a plaintiff alleges facts that tend to show the defendants were "pursuing personal interests wholly separate and apart from the entity." Hartline v. Gallo, No. 03 Civ. 1974, 2006 WL 2850609, at *9 (E.D.N.Y. Sept. 30, 2006) (rev'd on other grounds); see Chance v. Reed, 538 F. Supp. 2d 500, 509 (D. Conn. 2008) (explaining that it is possible for a conspiracy to exist despite the intracorporate doctrine "when the individual defendants are alleged to have been motivated by an independent personal stake in achieving the [organization's] objective.") (internal citations and quotation marks omitted).

Unfortunately, the Plaintiff completely failed to address this argument in his opposition, and accordingly, the Defendants do not address it in their reply. Nevertheless, the Court will assess whether the Plaintiff could rely on this "personal interest" exception to the intracorporate doctrine, in viewing the facts in a light most favorable to him. For the exception to apply, "[t]he [P]laintiff must . . . allege that [the Defendants] acted other than in the normal course of their corporate duties." Girard, 530 F.2d at 72 (internal quotation marks omitted).

Here, the entire premise for this lawsuit is the Plaintiff's contention that the individual Defendants acted in concert to fabricate the charges in an attempt to end the relationship between him and Tara Tully. These allegations, if assumed to be true, plausibly suggest that the Defendants acted in their own personal interest, and not in the interest of the STPD, in fabricating the charges against the Plaintiff. See Lewis v. Havernack, No. 12 Civ. 0031, 2013 WL 1294606, at *13 (N.D.N.Y. March 28, 2013); Hill v. City of New York, No. 03 Civ. 1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) (finding that the plaintiff's allegations that the defendants conspired to cover-up one of the defendant's alleged use of excessive force was

sufficient to apply the "personal stake" exception to the intracorporate conspiracy doctrine);
Alvarez, 2012 WL 6212612, at *3 (same).  Cf. K.D. ex rel. Duncan v. White Plains Sch. Dist., --
- F. Supp. 2d ----, 2013 WL 440556, at *9 (S.D.N.Y. Feb. 5, 2013) (finding the exception
inapplicable because the complaint alleged that the defendants were "on duty" and acting "within
the scope of their employment" at the time of the alleged conspiracies).  Certainly, "personal bias
does not constitute personal interest and is not sufficient to defeat the intracorporate conspiracy
doctrine."  Bond v. Board. of Educ. of City of New York, 1999 WL 151702, at *2 (E.D.N.Y.
Mar. 17, 1999) (explaining that although complaint alleged that defendant wanted to "get rid of"
plaintiff, this personal bias would not stop the application of the intracorporate doctrine).
However, the allegations in the Complaint appear to go far beyond mere personal bias.

Therefore, the Defendants' motion to dismiss the Plaintiff's conspiracy claim on the
ground of the intracorporate doctrine is denied.

### 2. The Alleged Conspiracy as Race Based

Finally, the Defendants contend that the Plaintiff's conspiracy claim is lacking an
essential element.  According to the Defendants, in order to state a conspiracy claim under 42
U.S.C. § 1985(3), a plaintiff must allege some racial or otherwise class-based invidious
discriminatory animus.  Once again, the Plaintiff fails to address this contention in his opposition
brief.  The argument is that the Plaintiff's complaint is devoid of allegations which could be
construed to allege a race based on otherwise class-based invidious discriminatory animus.

The Defendants are correct that in order to state a claim under § 1985(3), "there must be
some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the
conspirators' action."  Arteta v. Cnty. of Orange, 141 Fed. App'x 3, 8 (2d Cir. 2005) (quoting
Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)); see also

Harrison v. Lutheran Med. Cent., 468 F. App'x 33, 37 (2d Cir. 2012) (finding that a plaintiff may only state a claim under § 1985(3) where he alleges a conspiracy "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus."). This requires "specific factual allegations" regarding both the existence of the conspiracy and the discriminatory intent of the conspirators. Vertical Broad., Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 389–90 (E.D.N.Y. 2000).

Here, the Complaint plainly states a claim pursuant to 42 U.S.C. § 1985(3), but fails to allege any such animus. "Vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a claim under § 1985(3)." Knox v. Cnty. of Ulster, No. 11 Civ. 0112, 2013 WL 286282, at *7 (N.D.N.Y. Jan. 24, 2013). Therefore, the Court grants the Defendants' motion to dismiss the Plaintiff's claim brought under 42 U.S.C. § 1985(3). See Morpurgo v. Inc. Village of Sag Harbor, 697 F. Supp. 2d 309, 341 (E.D.N.Y. 2010) ("When a plaintiff fails to establish membership in a protected group, a civil rights conspiracy complaint under Section 1985 may be dismissed.").

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motion to dismiss the Plaintiff's 42 U.S.C. § 1983 claims is denied; and it is further

**ORDERED**, that the Defendants' motion to dismiss the Plaintiff's possible claims stemming from the August 5, 2007 arrest and/or March 28, 2008 conviction is granted; and it is further

**ORDERED**, that the Defendants' motion to dismiss the Plaintiff's 42 U.S.C. §1985(3) conspiracy claims is granted.

**SO ORDERED.**
Dated: Central Islip, New York
May 4, 2013


      */s/ Arthur D. Spatt*
      ARTHUR D. SPATT
    United States District Judge

24