**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
CRAIG J. CHILLEMI,

                      Plaintiff,

      - against -

THE TOWN OF SOUTHAMPTON, ERIC
SICKLES, JAMES KIERNAN, and
THOMAS TULLY,

                      Defendants.
---------------------------------------------------------X

**MEMORANDUM
AND ORDER**

12-3370 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

This case arises out of the alleged wrongful arrest and imprisonment of Plaintiff Craig J. Chillemi ("Plaintiff") by the Southampton Town Police Department ("STPD"). Presently before the Court is Plaintiff's motion to compel the Town of Southampton ("the Town"), Police Officer Eric Sickles ("P.O. Sickles"), Lieutenant James Kiernan ("Lt. Kiernan"), and Detective Thomas Tully ("Det. Tully") (collectively, "Defendants") to produce responses to certain interrogatories and document requests. *See generally* Plaintiff's Amended Motion to Compel [DE 55]. In particular, Plaintiff seeks information and documents related to, *inter alia*, internal investigations and disciplinary charges concerning the individual Defendants and the STPD's Street Crimes Unit. These investigations and disciplinary charges occurred after Plaintiff's arrest in July 2009 and are not directly related to that arrest. *See generally* Local Civil Rule 37.1 Declaration of Thomas A. Telesca, Esq., In Support of Amended Motion to Compel ("Telesca Decl.") [DE 55-1]. Defendants oppose the motion on the grounds that the information Plaintiff seeks is not relevant to

his claims and, in any event, Defendants have produced (or have agreed to produce) a substantial number of responsive documents. *See generally* Memorandum of Law In Opposition to Plaintiff's Motion to Compel ("Defs.' Opp.") [DE 50]; Kelly E. Wright, Esq. Supplemental Declaration in Opposition ("Wright Supp. Decl.") [DE 56]. On March 31, 2015, the Court issued a short Order, GRANTING, in part, and DENYING, in part, Plaintiff's motion to compel. *See* DE 58. The Court stated that an amplified Memorandum and Order setting forth the basis of the Court's decision would follow. The instant decision comprises that amplified Memorandum and Order.

**II.     BACKGROUND**

    **A.     Allegations in the Complaint**

On August 5, 2007, Plaintiff was arrested by the STPD's Street Crimes Unit during a raid of a home where Plaintiff was staying. *See* Compl. [DE 1] ¶ 13. At that time, Plaintiff was dating Tara Tully, the daughter of Defendant Det. Thomas Tully. Tara Tully was also present during the raid. *See id.* P.O. Sickles allegedly taunted Plaintiff during the raid about his relationship with Tara Tully and propositioned Tara Tully for a date. *Id.* ¶ 14. On March 28, 2008, Plaintiff pled guilty to the sale of a controlled substance and criminal possession of a controlled substance in the third degree and was sentenced to four years in prison. *Id.* ¶ 17.

In April 2009, Plaintiff was paroled and entered a work release program. *Id.* ¶ 18. He participated in this program from April 2009 through July 2009, while continuing to date Tara Tully. *Id.* ¶¶ 20-21. According to Plaintiff, his relationship with Tara Tully angered Det. Tully as well as P.O. Sickles, who was romantically interested in Tara Tully. Defendants conspired, according to Plaintiff, to end Plaintiff's relationship with Tara Tully under pretense and color of law. *Id.* ¶¶ 22-23.

On July 8, 2009, P.O. Sickles arrested Plaintiff for the unlicensed operation of a motor vehicle in the third degree and criminal possession of a controlled substance in the seventh degree. *Id.* ¶ 27. Plaintiff maintains that he was neither operating a vehicle nor in possession of any illicit drugs at the time of his arrest. *Id.* ¶ 30. According to Plaintiff, Tara Tully was driving the car and P.O. Sickles issued Plaintiff a ticket merely as a pretext to illegally search him. P.O. Sickles then allegedly produced a small bag of cocaine while handcuffing Plaintiff. *Id.* ¶ 26. Plaintiff contends that the charges against him were fabricated by P.O. Sickles, in concert with Lt. Kiernan and Det. Tully in an attempt to end Plaintiff's relationship with Tara Tully. *Id.* Plaintiff further alleges that Lt. Kiernan, who administered the oath for the General Traffic Complaint and Misdemeanor Information signed by P.O. Sickles, was aware of P.O. Sickles' unconstitutional actions and consciously chose to ignore them, effectively ratifying these illicit actions. *Id.* ¶ 34. Plaintiff also alleges that Det. Tully, in his supervisory role with the STPD, knowingly acquiesced in Plaintiff's unlawful arrest with deliberate indifference to the constitutional deprivations. *Id.* ¶ 35.

On October 29, 2009, Plaintiff agreed to a plea bargain which reduced the charges stemming from the July 2009 arrest. *Id.* ¶ 38. Plaintiff was not sentenced to any jail time, *id.*, though as a consequence of his convictions, he was removed from the work release program and remanded back to a correctional facility. *Id.* ¶ 41. At the time of his July 2009 arrest, Plaintiff alleges that Defendants knew the charges against him would result in a violation of his parole, leading to the Plaintiff's incarceration. *Id.* ¶ 36. Plaintiff claims that, as a direct result of the deprivation of his constitutional rights on July 8, 2009, he was falsely imprisoned for approximately three and a half months while awaiting the disposition of the July 8, 2009 charges, followed by an additional fourteen months in a New York State penitentiary. *Id.* ¶ 43. Plaintiff was released from prison on December 31, 2010. *Id.* ¶ 42.

In addition to describing the alleged actions taken against Plaintiff, the Complaint also asserts that the STPD Street Crimes Unit was disbanded in the summer of 2011. *Id.* ¶ 44. In May 2012, Lt. Kiernan was suspended without pay as a result of "thirty-two disciplinary charges in connection with acts of misconduct and malfeasance." *Id.* ¶ 45. At the time Lt. Kiernan was suspended, P.O. Sickles was sent to a drug rehabilitation center. *Id.* ¶ 46. Plaintiff alleges that, upon information and belief, Lt. Kiernan was aware of P.O. Sickles' drug use and "willfully and wantonly failed and/or refused to take corrective action." *Id.* Around May 15, 2012, the Suffolk County District Attorney ("the DA") commenced a grand jury investigation into the STPD, "including the disbanded Street Crimes Unit." *Id.* ¶ 47. Plaintiff alleges that, "as a direct result of the lack of proper oversight over the Street Crimes Unit by the Town, Plaintiff's most fundamental constitutional rights were violated." *Id.* ¶ 48.

Plaintiff commenced this action against Defendants on July 9, 2012 alleging violations of constitutionally protected rights pursuant to 42 U.S.C. § 1983. *See id.* ¶¶ 49-5.[1] Plaintiff also asserts claims of municipal liability against the Town pursuant to *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978), alleging, *inter alia*, that the Town "failed to properly supervise and train its police officers." *Id.* ¶¶ 54.

### B. Plaintiff's Discovery Requests

Plaintiff filed the instant motion[2] to compel Defendants to produce certain information and documents in response to Plaintiff's interrogatories and documents requests. For each individual

---

[1]    Plaintiff also asserted a conspiracy cause of action pursuant to 42 U.S.C. §1985(3). *See* Compl. ¶¶ 55-59. However, on May 4, 2013, Judge Spatt granted Defendants' motion to dismiss Plaintiff's conspiracy claims. *See* DE 32.

[2]    Plaintiff's original motion to compel was fully briefed and filed on March 28, 2014. *See* DE 46. Because the motion did not comply with Local Rule 37.1, the Court directed Plaintiff to

4

Defendant, Plaintiff requests: (i) the dates, circumstances, and grounds underlying any interruptions in service, internal investigations which resulted in discipline, disciplinary charges, and/or suspensions (Plaintiff's Interrogatory Nos. 2, 4-6); (ii) all employment documents, including training, performance reviews, complaints, internal investigations, disciplinary charges, and any interruption in service, as a result of suspension, administrative leave, sick leave, or otherwise (Plaintiff's Document Demand Nos. 3-5); and (iii) all visual and/or audio recordings of any and all interviews conducted in connection with internal investigations (Plaintiff's Document Demand No. 7). With regard to the Street Crimes Unit, Plaintiff requests all documents related to: (i) internal investigations into the alleged lack of oversight of the Street Crimes Unit (Plaintiff's Document Demand No. 8); (ii) the determination to disband the Unit (Plaintiff's Document Demand No. 9); and (iii) any complaints or internal investigations against members of the Street Crimes Unit which concern allegations of false or fabricated evidence (Plaintiff's Document Demand No. 10). Finally, Plaintiff seeks all documents concerning the stipulations of settlement reinstating P.O. Sickles and Lt. Kiernan (Plaintiff's Document Demand Nos. 12-13). *See* Pl.'s Decl. at 2-12.

Defendants objected to these requests on the grounds that they are overbroad and/or are not reasonably calculated to lead to admissible evidence. *See id.* Defendants also asserted in their response to Plaintiff's Interrogatory Nos. 2, 4, 5, and 6, and Document Demand Nos. 3, 4, and 5, that the information and/or documents sought are confidential and are protected from disclosure

---

file an amended motion, stating verbatim the discovery request as it was made, followed by the verbatim response given, and then the objection raised by counsel. *See* Elec. Order, Apr. 7, 2014. Plaintiff thereafter submitted an amended motion in compliance with the Court's Order, *see* DE 55, and Defendants' filed a supplemental declaration in opposition, *see* DE 56.

pursuant to N.Y. Civ. Rights Law § 50-a ("Civil Rights Law § 50-a") and/or the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d.[3] *See* Pl.'s Decl. at 2, 4-8.

Following a meet-and-confer between the parties, Defendants agreed to produce additional information and documents in response to certain requests. Defs.' Opp. at 3 n.2; *see* Memorandum of Law in Support of Motion to Compel ("Pl.'s Mem.") [DE 47] at 4. In particular, Defendants agreed to provide information regarding the individual Defendants' interruptions in service, disciplinary charges, and suspensions (i) for the ten-year period prior to and including Plaintiff's July 8, 2009 arrest; and (ii) for the period subsequent to Plaintiff's August 5, 2007 and/or July 8, 2009 arrest if the conduct underlying the interruption in service, disciplinary charge or suspension was related to either of those arrests. *See* Defs.' Opp. at 3 n.2. Defendants also agreed to turn over copies of any "claims" against the individually named officers related to false arrest and/or the planting of evidence and which arose during the ten years prior to and including Plaintiff's July 8, 2009 arrest. *See id.* The parties could not agree, however, whether Plaintiff was entitled to discover information and/or documents related to, *inter alia*, (i) interruptions in service, internal investigations, disciplinary charges, and suspensions which occurred ***after*** Plaintiff's July 9, 2008 arrest and which do not concern the Defendants' conduct with regard to either of Plaintiff's arrests; and (ii) the now-disbanded Street Crimes Unit.

C.     **The Parties' Contentions**

Plaintiff argues that documents and information concerning alleged misconduct by the individual Defendants and the now-defunct Street Crimes Unit are "relevant and important to his

---

[3] Notwithstanding these objections, Defendants produced documents in response to Document Demand Nos. 3-5 which related to each individual Defendants' "date of hire, training, certifications and reviews." Telesca Decl. at 5, 7-8.

case and are likely to lead to admissible evidence." Pl.'s Mem. at 7. Plaintiff notes that the investigation and suspension of P.O. Sickles and Lt. Kiernan, as well as the dissolution of the Street Crimes Unit, "were widely reported in Newsday and other local media outlets, and some of the documents sought by Plaintiff have become available on Newsday's website." *Id.* at 2. According to Plaintiff, "[i]t has also been widely reported by Newsday that the Suffolk County District Attorney has reviewed and vacated a number of convictions in which defendants had a role in securing." *Id.* With this in mind, Plaintiff asserts that information pertaining to internal investigations and disciplinary charges arising out of P.O. Sickles' alleged drug dependency and Lt. Kiernan's failure to supervise Sickles are relevant to establish Defendants' intent, to impeach their credibility, "and to prove municipal liability under *Monell*." *Id.* at 4. In particular, Plaintiff maintains that the requested discovery goes to Defendants' "pattern of abusing their respective positions in favor of personal agendas, such as making false arrests, planting evidence and other improper conduct." Telesca Decl. at 3.

In their opposition, Defendants argue that internal investigations and disciplinary charges which were brought against P.O. Sickles and Lt. Kiernan several years after Plaintiff's 2009 arrest do not fall within the scope of relevant discovery set forth in Fed. R. Civ. P. 26(b)(1). Defs.' Opp. at 6. Defendants point out that they have already produced to Plaintiff "[m]ore than 1,600 pages of discovery . . . including more than 1,000 pages of personnel documents for the three individual defendants," and have also agreed to provide the supplemental discovery outlined above. *Id.* at 2. Defendants do not dispute that an internal investigation was conducted regarding P.O. Sickles' alleged drug dependency. Nor do they dispute that disciplinary charges were brought against Lt. Kiernan several years after Plaintiff's 2009 arrest. However, Defendants argue that Plaintiff has not provided a valid basis for compelling further information about these incidents, which were

completely unrelated to any misconduct alleged in Plaintiff's Complaint. *Id.* at 3-4. Defendants point out that, although the DA recommended the dismissal of certain convictions based on P.O. Sickles' fitness for duty, Plaintiff's convictions were not dismissed. *Id.* at 14. Rather, Plaintiff's Complaint alleges that "he was falsely arrested because the officers were against his relationship with Tara Tully," allegations which, according to Defendants, are not probative of "disciplinary documentation regarding Sickle's later alleged prescription drug dependency and Kiernan's alleged failure to supervise him." *Id.* at 8. Defendants further note that Plaintiff has offered no legal support for his argument that disciplinary charges proffered several years after Plaintiff's claimed wrongful arrests "will somehow prove *Monell* liability." *Id.* at 7. According to Defendants, "[w]hile prior complaints and disciplinary matters regarding claims of false arrest could be relevant in terms of showing that the municipality had notice, there is no similar probative value for subsequent disciplinary . . . charges which do not relate to the incident in question." *Id.* at 14.

## III. LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, non-privileged information which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). "'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (noting that the scope of discovery under Rule 26(b) is "very broad"); *Greene v. City of New York*, No. 08 Civ. 243, 2012 WL 5932676, at *3 (E.D.N.Y. Nov. 27, 2012) (citing *Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (explaining that Rule 26 must be construed

broadly to include any matter that has, or could reasonably have, bearing on any issue that is, or may be, in the case); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009); *Evans v. Calise,* No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)). In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes."). With these principles in mind, the Court turns to the specific discovery requests which are in dispute.

## IV. DISCUSSION

### A. Plaintiff's Interrogatory Nos. 2, 4, 5 and 6

As noted, Plaintiff's disputed interrogatories seek information regarding any interruptions of service, internal investigations which resulted in discipline, disciplinary charges, and suspensions for each of the individual Defendants. As written, Plaintiff's interrogatories are overbroad in that they lack any limitation as to temporal scope. Nevertheless, Defendants have agreed to provide information about interruptions in service, disciplinary charges, and suspensions which occurred (i) ten years prior to and including Plaintiff's July 8, 2009 arrest; and (ii) after Plaintiff's July 8, 2009 arrest if the Defendants' underlying conduct related to either that arrest or

Plaintiff's prior arrest in August 2007. Plaintiff argues that Defendants should be compelled to disclose all responsive information even if it relates to conduct which occurred after his July 2009 arrest and even if such information is wholly unrelated to that arrest.

The Court concludes that Plaintiff has not met his burden of making a *prima facie* showing that such information is relevant to his claims in this action. It is well established that "instances of ***prior*** misconduct may be offered at trial to prove intent if the misconduct constitutes similar act evidence." *Pacheco v. City of New York*, 234 F.R.D. 53, 55 (E.D.N.Y. 2006) (citing *Ismail v. Cohen*, 899 F.2d 183, 188–89 (2d Cir.1990)) (emphasis supplied); *see, e.g.*, *Frails v. City of New York*, 236 F.R.D. 116, 117 (E.D.N.Y. 2006) ("Evidence of prior acts of similar misconduct may be introduced at trial to prove intent.") (citing Fed. R. Evid. 404(b)). Accordingly, courts have held that records of disciplinary charges, internal investigations, and complaints concerning ***prior*** instances of misconduct which are similar to the misconduct alleged by the plaintiff "could lead to evidence that would be admissible at trial and thus, are discoverable." *Frails*, 236 F.R.D. at 117-18 (collecting cases) (emphasis supplied). Here, however, Plaintiff seeks information about the officer's alleged ***subsequent*** misconduct, *i.e.*, interruptions in service, disciplinary charges resulting from internal investigations, and suspensions which occurred ***after*** Plaintiff's July 8, 2009 arrest. Plaintiff has not pointed to any legal authority to support his bare assertion that subsequent instances of police misconduct are relevant to prove an officer's intent, nor has Plaintiff demonstrated how the information he seeks could lead to admissible evidence. Nor has Plaintiff shown how the requested discovery would support his claim of municipal liability. Plaintiff alleges that "the acts, abuse, and omissions" allegedly committed by the individual Defendants here arose out of the Town's policy of failing to supervise and train its officers. Compl. ¶ 54. Simply put, Plaintiff has not demonstrated how information about the officers'

interruptions in service, disciplinary charges, and suspensions for the time period *after* his July 2009 arrest are probative of the Town's policies and practices which were in place at the time of his arrest.

Plaintiff makes clear that his requests are calculated to obtain further information about the STPD's internal investigation into P.O. Sickles' alleged drug dependency and the disciplinary charges brought against Lt. Kiernan, which were publicized in Newsday. Indeed, Plaintiff points out that he has become aware of certain information based on documents available on the Newsday website, including the fact that Lt. Kiernan allegedly "pled guilty to charges that he was incompetent as Sickles' supervisor and made false statements to Suffolk County Internal Affairs Investigators." Memorandum in Further Support of Plaintiff's Motion to Compel ("Pl.'s Reply") [DE 49], at 5. However, the mere fact that Newsday published this and other information about post-arrest misconduct by Lt. Kiernan and P.O. Sickles does not automatically entitle Plaintiff to further discovery, particularly where Plaintiff has not shown that the information he seeks is relevant to the claims raised in his Complaint. "The locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading." *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-976, 2012 WL 1899222, at *5 (E.D.N.Y. May 24, 2012) (quoting *Unger v. Cohen*, 125 F.R.D. 67, 71 (S.D.N.Y. 1989)). Here, the Complaint alleges that, in essence, the Defendants falsely arrested and imprisoned Plaintiff because they disapproved of his relationship with Tara Tully. There is no allegation that the deprivation of Plaintiff's constitutional rights was caused by or in any way connected to possible drug abuse by P.O. Sickles or Lt. Kiernan's purported failure to properly supervise Sickles while he was allegedly abusing drugs. Similarly, the post-incident bad acts allegedly committed by P.O. Sickles and Lt. Kiernan, which

led to the internal investigation and disciplinary charges, are not similar to Plaintiff's claim that he was falsely arrested due to his relationship with Tara Tully. Plaintiff does not dispute Defendants' contentions that the investigation into P.O. Sickles' alleged drug dependency was not commenced until October 2011, more than two years after Plaintiff's July 2009 arrest. And Plaintiff concedes in his Complaint that disciplinary charges were not brought against Lt. Kiernan until May 2012. Although Newsday reported (and Defendants admit) that the DA vacated certain convictions based on P.O. Sickles' involvement in those cases, Plaintiffs' convictions were not vacated, despite his allegations that P.O. Sickles' was directly involved in both arrests.[4] In short, Plaintiff has not established an adequate connection between the claims raised in his Complaint and subsequent, unrelated investigations and disciplinary actions taken against P.O. Sickles and Lt. Kiernan years after Plaintiff's arrest to warrant disclosure of that information,

Finally, Plaintiff asserts that information about alleged misconduct by and disciplinary action brought against P.O. Sickles and Lt. Kiernan could lead to admissible evidence used to impeach the Defendants at trial. The Court is afforded broad discretion in managing the discovery process. *See, e.g.*, *Barbara*, 2013 WL 1952308, at *3. In exercise of that discretion here and in light of the numerous documents already disclosed by Defendants in this case, the Court determines that the risk of possible prejudice to Defendants resulting from the disclosure of information about subsequent police misconduct unrelated to this litigation outweighs any prospect

---

[4] Even if Plaintiff's conviction had been vacated due to P.O. Sickles' involvement in his arrest, Plaintiff would not necessarily be entitled to the information he seeks here. *See Cooks v. Town of Southampton*, No. CV 13-3460, 2015 WL 1476672, at *7 (E.D.N.Y. Mar. 31, 2015) (holding that, in a case where the plaintiff's conviction was vacated due to P.O. Sickles' involvement in the arrest and prosecution, the plaintiff had not shown that information regarding the internal investigation into "alleged misconduct by P.O. Sickles and the Street Crime Unit, which occurred *after* Plaintiff's arrest on January 19, 2011, is relevant to his claims in this action.") (emphasis in original).

that Plaintiff may discover impeachment evidence that is actually admissible. Moreover, contrary to Plaintiff's contentions, his case is distinguishable from those cases reported in Newsday where the DA vacated the underlying convictions due to "the prosecutors' failure to provide defense counsel with impeachment materials related to Sickles' dependency on prescription drugs." Pl.'s Reply at 5. Plaintiff does not acknowledge the distinction between the impeachment evidence he seeks here and the specific type of impeachment evidence – *Brady* evidence –implicated in the cases involving vacated convictions. As noted, Plaintiff's underlying convictions arising out of his arrests by P.O. Sickles and the Street Crimes Unit were not vacated nor has he challenged his convictions based on any alleged *Brady* violation. Plaintiff therefore has no grounds to demand disclosure of the materials he seeks from Defendants.

Accordingly, Defendants are not compelled to respond to Plaintiff's interrogatories to the extent they seek information concerning interruptions in service, internal investigations, disciplinary charges, and suspensions which occurred after Plaintiff's July 8, 2009 arrest and which are unrelated to that arrest or Plaintiff's prior 2007 arrest. However, the Court directs Defendants to turn over information which Defendants represented they are willing to disclose, *i.e.*, information related to Defendants' interruptions in service, disciplinary charges, and suspensions (i) for the ten-year period prior to and including Plaintiff's July 8, 2009 arrest; and (ii) for the period subsequent to Plaintiff's August 5, 2007 and/or July 8, 2009 arrest if the conduct underlying the interruption in service, disciplinary charge, suspension, or complaint was related to Plaintiff's arrest(s). If Defendants take the position that such information does not exist, then Defendants are directed to provide an affidavit from a person with first-hand knowledge stating that fact.

In light the Court's determination that Plaintiff has not established the relevance of information concerning subsequent internal investigations and disciplinary actions against P.O. Sickles and Lt. Kiernan, the Court need not analyze whether this information should be protected from disclosure pursuant to Civil Rights Law 50-a and/or HIPPA.

> **B.** **Plaintiff's Document Demands No. 3, 4, and 5**

These document requests seek all documents concerning the employment of the individual Defendants, "including, but no limited to, training, performance reviews, complaints, internal investigations, disciplinary charges, and any interruption in service." Defendants have already produced information about the officers' dates of hire, training, certifications, and reviews. For the reasons just explained, Defendants are not compelled to provide employment documents about interruptions in service, internal investigations, and disciplinary charges which occurred after Plaintiff's July 8, 2009 arrest and which are unrelated to that arrest or to Plaintiff's prior 2007 arrest. However, to the extent Defendants have responsive documents concerning such information (i) for the ten-year period prior to and including Plaintiff's July 8, 2009 arrest; and (ii) for the period subsequent to both of Plaintiff's arrests if the underlying conduct concerned either arrest, Defendants must disclose those documents. Moreover, Defendants have agreed to turn over copies of any "claims" made against the individual Defendants for false arrest and/or the planting of evidence and which arose during the ten years prior to and including Plaintiff's July 8, 2009 arrest. Assuming that "claims" refers to all formal and informal complaints filed against the officers, the Court finds that Defendants have properly limited their proposed supplemental discovery to Defendants' prior acts of misconduct similar to those alleged in Plaintiff's Complaint. *See, e.g.*, *Frails*, 236 F.R.D. at 117; *Pacheco*, 234 F.R.D. at 55. The Court further directs

Defendants to provide this supplemental discovery or, in the alternative, provide an affidavit from a person with first-hand knowledge stating that no such documents exist.

### C. Plaintiff's Document Demand No. 7

This demand seeks "visual and/or audio recordings of any and all interviews conducted in connection with internal investigations" of the individual Defendants. From Plaintiffs' submissions, the Court infers that the point of this request is to obtain "audio tapes from the internal affairs investigation" into Lt. Kiernan, which Plaintiff apparently read about in Newsday. *See* Pl.'s Reply at 5. For the reasons explained above, Plaintiff is not entitled to discover information concerning internal investigations of the Defendants which occurred subsequent to Plaintiff's July 2009 arrest except those investigations which concerned Defendants' conduct related to his arrest. To the extent Defendants have in their possession audio and visual recordings of internal investigations which occurred prior to Plaintiff's arrests and/or which concern Defendants' conduct regarding Plaintiffs' arrests, Defendants must produce such recordings.

### D. Plaintiff's Document Demand Nos. 8, 9 and 10

These requests seek all documents concerning (i) internal investigations into lack of oversight into the Street Crimes Unit; (ii) the decision to disband the Street Crimes Unit; and (iii) any complaints or internal investigations against members of the Street Crimes Unit related to allegations of false or fabricated evidence. There is no dispute that, as alleged in Plaintiff's Complaint, the Street Crimes Unit was disbanded in the summer of 2011, nearly two years after Plaintiff's July 2009 arrest. As with information about the individual Defendants, the Court finds Plaintiff has not met his burden of making a *prima facie* showing that documents regarding alleged misconduct by the Street Crimes Unit, which occurred *after* Plaintiff's July 2009 arrest, are relevant to his claims in this action. Accordingly, the Court finds that Defendants are not

compelled to disclose documents concerning investigations into the Street Crimes Unit or the decision to dissolve the Unit which took place after to Plaintiff's arrests. Nor are Defendants compelled to disclose complaints against or internal investigations into members of the Street Crimes Unit except as outlined above with regard to the individual Defendants. However, the Court concludes that, to the extent Plaintiff seeks information about the alleged lack of oversight into the Street Crime Unit up to and including the time of Plaintiff's arrest on July 8, 2009, such information is relevant to Plaintiff's claims and must be produced.

    E.  **Plaintiff's Document Demands Nos. 11 and 12**

These requests seek all documents concerning the stipulations of settlement reinstating Lt. Kiernan and P.O. Sickles at the STPD. Defendants have provided the Town's resolutions ratifying each stipulation of settlement, but they have declined to produce additional documents on relevancy grounds. For the reasons outlined above, Plaintiff has not demonstrated that he is entitled to discover additional documents related to the stipulations of settlement, which are the consequence of internal investigations and disciplinary charges which occurred after Plaintiff's July 2009 arrest.

**V.**  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion to compel discovery is hereby GRANTED, in part, and DENIED, in part, to the extent set forth in this Memorandum and Order. Defendants are directed to produce to Plaintiff's counsel the responsive documents and information set forth in this Order within 14 days.

**SO ORDERED.**

Dated: Central Islip, New York
       April 20, 2015

                                         <u>/s/ A. Kathleen Tomlinson</u>
                                         A. KATHLEEN TOMLINSON
                                         U.S. Magistrate Judge