FILED
CLERK
10/7/2015 10:41 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

CRAIG J. CHILLEMI,

                    Plaintiff,

    -against-

THE TOWN OF SOUTHAMPTON, ERIC
SICKLES, JAMES KIERNAN, and THOMAS
TULLY,

                 Defendant.

--------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
12-cv-3370(ADS)(AKT)

<u>**APPEARANCES:**</u>

**RUSKIN MOSCOU FALTISCHEK PC**
*Attorneys for the Plaintiff*
1425 RXR Plaza
Uniondale, NY 11553
    By:   Thomas A. Telesca, Esq., Of Counsel

**DEVITT SPELLMAN BARRETT, LLP**
*Attorneys for the Defendants*
50 Route 111
Smithtown, NY 11787
    By:   David H. Arntsen, Esq.

**SPATT, District Judge:**

On July 9, 2012, the Plaintiff Craig J. Chillemi (the "Plaintiff" or "Chillemi") commenced this civil rights action against the Town of Southampton (the "Town") and several members of the Town's Police Department, including Police Officer Eric Sickles ("Officer Sickles"), Lieutenant James Kiernan ("Lieutenant Kiernan"), and Detective Thomas Tully ("Detective Tully"). Presently before the Court is motion by Chillemi, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(a),

seeking to set aside a pretrial order (the "Underlying Order") of United States Magistrate Judge A. Kathleen Tomlinson.

For the reasons that follow, the motion is denied.

## I.     Background

### A.     The Factual Background

The following facts are drawn from Chillemi's complaint and the papers and exhibits submitted in connection with the instant motion.

In or about December 2006, the Plaintiff allegedly began dating a woman named Tara Tully ("Tara"). Tara is the daughter of the Defendant Detective Tully and the Goddaughter of the Defendant Lieutenant Kiernan.

In 2007, the Plaintiff, Tara, and four other individuals were residing together in a home on Hilltop Road in Southampton (the "Residence"). The Plaintiff neither owned nor rented the Residence.

On or about August 5, 2007, the Residence was raided by the Street Crimes Unit of the Southampton Police Department. Apparently, the raid was precipitated by a sale of drugs from one of the four individuals living at the Residence to an undercover Southampton police officer. Lieutenant Kiernan and Officer Sickles participated in the raid.

The complaint does not allege what contraband, if any, was found during the raid. However, the Plaintiff was arrested. It is alleged that, during the raid, Officer Sickles taunted him about his relationship with Tara and propositioned her for a date.

Allegedly, Tara was placed in handcuffs. However, when Lieutenant Kiernan observed her being apprehended, he removed her handcuffs and escorted her to his car.

All of the Residence's occupants, except for Tara, were arrested and charged in connection with the raid. However, Tara allegedly made a video recording of the raid on her cell phone.

When Lieutenant Kiernan learned that Tara possessed a video recording of the raid, he arranged for her to meet him at the Hampton Bays Diner, a local restaurant. Allegedly, Officer Sickles attended this meeting instead of Lieutenant Kiernan. Officer Sickles allegedly threatened Tara and offered to dismiss the charges against her boyfriend, the Plaintiff, if she would go on a date with Officer Sickles.

On or about March 28, 2008, the Plaintiff was sentenced to a term of imprisonment of four years after he pleaded guilty to the sale of a controlled substance and criminal possession of a controlled substance in the third degree.

In April 2009, the Plaintiff was paroled and entered a work release program through the Lincoln Correctional Facility. In this regard, Chillemi earned $286 per week working for an entity known as Malone Restoration in Douglaston, New York. The Plaintiff alleges that between April 26, 2009 and July 8, 2009, he never missed a day of work or a nightly curfew at Lincoln Correctional Facility. Allegedly, he also never received a negative report from his parole officer.

Throughout this time, Chillemi continued to date Tara. Also throughout this time, Officer Sickles allegedly continued to outwardly express his interest in becoming romantically involved with Tara. Chillemi alleges that each of the individual Defendants was incensed by Tara's continued romantic involvement with him and conspired to end the relationship.

On July 8, 2009, Tara drove the Plaintiff from a restaurant in Riverhead to the home of a friend in Hampton Bays, New York. It is alleged that, shortly after Chillemi arrived, Officer Sickles also arrived in an unmarked police vehicle. Although Chillemi alleges that he was riding in the passenger seat of the vehicle, Officer Sickles allegedly stated that the conditions of his work release program prohibit him from driving. Officer Sickles issued a ticket to the Plaintiff for aggravated unlicensed operation of a motor vehicle.

Chillemi alleges that Officer Sickles used this traffic ticket as a pretext to conduct an illegal search of the Plaintiff's person. In particular, the Plaintiff alleges that Officer Sickles handcuffed him in connection with the ticket and then, without actually searching any of the Plaintiff's pants pockets, produced a small bag containing a substance that appeared to be cocaine. Allegedly, Officer Sickles stated that he found the bag inside Chillemi's pocket.

Officer Sickles arrested the Plaintiff for unlicensed operation of a motor vehicle in the third degree and criminal possession of a controlled substance in the seventh degree.

The Plaintiff alleges that Officer Sickles made various false sworn statements in connection with these events. First, Officer Sickles allegedly stated in a General Traffic Complaint that Chillemi, and not Tara, had been driving the subject vehicle on the night of July 8, 2009. Second, Officer Sickles allegedly stated in a Misdemeanor Information that, at the time of Chillemi's arrest for the traffic violation, he possessed a zip-lock bag of cocaine in his pants pocket. According to the Plaintiff, both of the charges against him were fabricated by the individual Defendants as part of a concerted effort to end the relationship between him and Tara. In this regard, Chillemi alleges that Lieutenant Kiernan and Detective Tully knew that the statements made by Officer Sickles to support the charges were false but failed to take any corrective action, thereby either ratifying or knowingly acquiescing in Officer Sickles' actions.

The Plaintiff was on probation at the time of his arrest. As a result, he was ordered to serve three and one-half months at the Yaphank Correctional Facility awaiting the disposition of the charges against him.

On or about October 29, 2009, the Plaintiff agreed to a plea bargain. The charge of criminal possession of a controlled substance in the seventh degree was reduced to a violation for unlawful possession of marijuana. In addition, the charge of aggravated unlicensed operation of a motor vehicle was reduced to facilitating aggravated unlicensed operation. The Plaintiff received no jail time; received no points on his driver's license; and was required to pay a $910 fine. However, as a result of the incident, Lincoln Correctional Facility denied him re-entry into its

work release program. Consequently, Chillemi served approximately fourteen months at the Oneida Correctional Facility, a state penitentiary in Rome, New York.

In or about May 2011, the Town hired one William Wilson, Jr. as the Police Department Chief. Several months later, Wilson allegedly conducted an investigation into the Street Crimes Unit, which resulted in the unit's dissolution. In addition, the investigation allegedly resulted in Lieutenant Kiernan, the unit's Commander, being suspended without pay for thirty-two disciplinary charges in connection with acts of misconduct or malfeasance. Separately, but at or about the same time as Lieutenant Kiernan's suspension, Officer Sickles allegedly was also suspended and required to attend a drug rehabilitation center.

Based on these allegations, Chillemi asserts the following causes of action: (i) violations of his Fourth, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983; and (ii) conspiracy to interfere with his Constitutional rights in violation of 42 U.S.C. § 1985(3).

## B.    Relevant Procedural History

On August 30, 2012, the Defendants moved, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the complaint for failure to state a claim upon which relief may be granted.

On December 7, 2012, United States Magistrate Judge E. Thomas Boyle issued an order staying discovery in this matter pending the adjudication of the Defendants' motion to dismiss.

On May 4, 2013, this Court issued a Memorandum of Decision and Order, *inter alia*, granting the Defendants' motion to dismiss the Plaintiff's 42 U.S.C. § 1985 conspiracy claims; and denying the Defendants' motion to dismiss the Plaintiff's 42 U.S.C. § 1983 claims.

On May 23, 2013, the Defendants interposed an answer to the surviving claims.

On July 17, 2013, upon Magistrate Judge Boyle's retirement, this case was reassigned to United States Magistrate Judge Gary R. Brown. On October 29, 2013, Magistrate Judge Brown recused himself and the case was reassigned to United States Magistrate Judge A. Kathleen Tomlinson.

### 1. The Plaintiff's Motion to Compel

On March 28, 2014, the Plaintiff filed a motion, pursuant to Fed. R. Civ. P. 33, 34, and 37(a), and Local Civil Rule 37.3, seeking to compel responses to certain interrogatories and the production of documents. On April 7, 2014, Judge Tomlinson ordered the Plaintiff to revise his motion papers to conform to the format set forth in Local Civil Rule 37.1. On April 11, 2014, the Plaintiff filed amended motion papers. The Court will now discuss the asserted basis for the Plaintiff's motion to compel.

Chillemi propounded the following interrogatories to the Defendants:

Interrogatory No. 2: Set forth each interruption in service for each Officer, whether by administrative leave, suspension, or otherwise, and describe the circumstances surrounding each interruption, including the dates and basis and/or grounds for any such interruption.

Interrogatory No. 4: Have any of the Officers been disciplined as a result of any internal investigation? If so, set forth in detail the circumstances surrounding such investigation, including the date and grounds for such investigation.

Interrogatory No. 5: Identify each and every disciplinary charge filed against one or more of the Officers, including the date and grounds for such charge(s).

Interrogatory No. 6: Identify each and every suspension of any one or more of the Officers, including the date and grounds for such suspension(s).

See Jan. 28, 2014 Decl. of Thomas A. Telesca, Esq. ("Telesca Decl."), Ex. "B."

In addition, Chillemi requested production of the following categories of documents:

3. All documents concerning the employment of Eric Sickles, including, but not limited to, training, performance reviews, complaints, internal investigations, disciplinary charges, and any interruption in serve, as a result of suspension, administrative leave, sick leave, or otherwise.

4. All documents concerning the employment of James Kiernan, including, but not limited to, training, performance reviews, complaints, internal investigations, disciplinary charges, and any interruption in serve, as a result of suspension, administrative leave, sick leave, or otherwise.

5. All documents concerning the employment of Thomas Tully, including, but not limited to, training, performance reviews, complaints, internal investigations, disciplinary charges, and any interruption in serve, as a result of suspension, administrative leave, sick leave, or otherwise.

7. All visual and/or audio recordings of any and all interviews conducted in connection with internal investigations of Eric Sickles, James Kiernan, and/or Thomas Tully.

8. All documents concerning internal investigations into the alleged lack of oversight of the Street Crimes Unit.

9. All documents concerning the determination to disband the Street Crimes Unit.

10. All documents concerning any complaints or internal investigations against members of the Street Crimes Unit related to allegations of false or fabricated evidence.

12. All documents concerning the stipulation of settlement reinstating James Kiernan.

13. All documents concerning the stipulation of settlement reinstating Eric Sickles.

See Telesca Decl., Ex. "C".

Apparently, in responses to these various interrogatories, the Defendants agreed to produce the following categories of documents: (i) those pertaining to the ten years prior to the Plaintiff's arrest; and (ii) those pertaining to any time after the Plaintiff's arrest, but only if the conduct underlying the interruption in service, disciplinary charge or suspension was related directly to the Plaintiff's previous arrests.

At the heart of the parties' discovery dispute was whether the Defendants were required to produce documents or information concerning any other interruptions in service, suspensions, disciplinary charges, or claims involving the individual Defendants subsequent to the Plaintiff's July 8, 2009 arrest, even if the documents were unrelated to the Plaintiff's prior arrests. The Defendants also allegedly did not produce documents relating to the now-dissolved Street Crimes Unit.

The Plaintiff contended that such information is relevant to establish the Defendants' intent; to impeach their credibility; to support punitive damages; and to

prove municipal liability under <u>Monell v. Dep't of Social Servs. of the City of New York</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ("<u>Monell</u>").  As Judge Tomlinson noted:

> Plaintiff argues that documents and information concerning alleged misconduct by the individual Defendants and the now-defunct Street Crimes Unit are "relevant and important to his case and are likely to lead to admissible evidence."  Pl.'s Mem. at 7.  Plaintiff notes that the investigation and suspension of P.O. Sickles and Lt. Kiernan, as well as the dissolution of the Street Crimes Unit, "were widely reported in Newsday and other local media outlets, and some of the documents sought by Plaintiff have become available on Newsday's website."  *Id.* at 2.  According to Plaintiff, "[i]t has also been widely reported by Newsday that the Suffolk County District Attorney has reviewed and vacated a number of convictions in which defendants has a role in securing."  *Id.* With this in mind, Plaintiff asserts that information pertaining to internal investigations and disciplinary charges arising out of P.O. Sickles' alleged drug dependency and Lt. Kiernan's failure to supervise Sickles are relevant to establish Defendants' intent, to impeach their credibility, "and to prove municipal liability under *Monell*."  *Id.* at 4. . . .

Underlying Order at 7.

The Defendants opposed the motion, arguing principally that documents and information relating to investigations and disciplinary charges against Officer Sickles and Lieutenant Kiernan several years after the Plaintiff's arrest are outside the scope of permissible discovery under Rule 26.

## 2.     The Underlying Order

Judge Tomlinson granted in part and denied in part the motion to compel, largely adopting the same temporal cut-off that the Defendants had proposed – namely, the Plaintiff is entitled to discover responsive documents and information pertaining to the time period (a) prior to the Plaintiff's July 2009 arrest, and (b)

subsequent to the arrest but only if the documents and information concerned the Defendants' conduct in connection with the Plaintiff's previous arrests.

For example, the court denied the motion with respect to interrogatories numbered 2, 4, 5, 6, which sought information concerning any interruptions in service, suspensions, disciplinary charges, or claims involving the individual Defendants subsequent to the Plaintiff's July 2009 arrest, even if the documents were unrelated to the Plaintiff's prior arrests. In this regard, Judge Tomlinson noted that, although records of disciplinary charges, internal investigations, and complaints concerning *prior* instances of misconduct could lead to admissible evidence, the Plaintiff in this case sought information about the Defendants' *subsequent* misconduct. The court noted that Chillemi had not pointed to any legal authority to support his assertion that subsequent instances of police misconduct are relevant to prove an officer's intent; that Chillemi had not demonstrated how the information he sought could lead to admissible evidence; or how the requested discovery would support a claim of municipal liability under Monell. "Simply put," wrote Judge Tomlinson, the "Plaintiff [did] not demonstrate[ ] how information about the officers' interruptions in service, disciplinary charges, and suspensions for the time period *after* his July 2009 arrest are probative of the Town's policies and practices which were in place at the time of his arrest." Underlying Order at 10-11 (emphasis in original).

The court reached similar conclusions with respect to each of the challenged categories of documents and information. For example, as to document demands 3,

4, and 5, which sought personnel records relating to the individual Defendants, including training, performance reviews, complaints, internal investigations, disciplinary charges, and any interruption in service, Judge Tomlinson granted partial relief.  In particular, the court held that the Defendants had already produced information regarding the officers' dates of hire, training, certifications, and reviews, but, to the extent they possess responsive documents pertaining to the ten years prior to the Plaintiff's arrest and for the period subsequent to the Plaintiff's arrest, if the conduct concerned the Plaintiff's previous arrests, such documents must be disclosed.

As to document demand 7, Judge Tomlinson inferred from the Plaintiff's submissions that the "visual and/or audio recordings" he sought were "audio tapes from the internal affairs investigation into Lt. Kiernan, which Plaintiff apparently read about in Newsday."  Underlying Order at 15.  Again, the court held that Chillemi is not entitled to discover such information for the period subsequent to his July 2009 arrest, but, to the extent the Defendants possess audiovisual evidence concerning internal investigations which occurred prior to the Plaintiff's arrest and/or concern the Defendants' conduct in connection with those arrests, they must be produced.

Similarly, as to documents concerning: (i) internal investigations into lack of oversight into the Street Crimes Unit; (ii) the decision to disband the Street Crimes Unit; and (iii) any complaints or internal investigations against members of the Street Crimes Unit, Judge Tomlinson held that the Plaintiff had not established the

relevance of such documents as they pertain to events post-dating the Plaintiff's arrest.

Further, as to the stipulations of settlement reinstating Lieutenant Kiernan and Officer Sickles to the Town's police department, Judge Tomlinson held that Plaintiff had not demonstrated the relevance of such documents, "which are the consequence of internal investigations and disciplinary charges which occurred after the Plaintiff's July 2009 arrest." Underlying Order at 16.

To the extent that the Plaintiff relied upon publicity generated by Lieutenant Kiernan's suspension and Officer Sickles' drug dependency to request additional discovery, the court noted that the pleading failed to allege that the deprivation of Chillemi's constitutional rights was caused by or in any way connected to possible drug abuse by Officer Sickles or by Lieutenant Kiernan's purported failure to properly supervise him while he was using drugs. Rather, the complaint alleges simply that the Defendants falsely arrested and imprisoned the Plaintiff because they disapproved of his relationship with Tara.

To the extent the Plaintiff contended that the information sought by these discovery demands would lead to impeachment material, the court disagreed. Explicitly exercising her discretion to manage the discovery process, Judge Tomlinson determined that the risk of possible prejudice to the Defendants resulting from the disclosure of information about subsequent police misconduct unrelated to this litigation outweighs any prospect that the Plaintiff may discover impeachment evidence that is actually admissible.

## C.     The Instant Motion

In the present motion, Chillemi seeks to set aside Judge Tomlinson's Underlying Order on the grounds that it is clearly erroneous and contrary to established law.  In particular, referring to the court's determination that post-arrest records are, for the most part, not discoverable, the Plaintiff asserts that Judge Tomlinson "has drawn an unwarranted temporal line based upon what appears to be confusion over what is relevant for purposes of discovery under Fed. R. Civ. P. 26 as opposed to what may be admissible at trial to prove Plaintiff's false arrest claim under Fed. R. Evid. 403 or 404(b)."  Pl. Memo of Law at 13.  This broad contention appears to encapsulate two more narrow arguments:  (i) the Underlying Order erroneously concluded that post-arrest discovery does not satisfy the standard for relevance under Fed. R. Civ. P. 26 when, in fact, it is relevant to establish the Defendants' intent, impeach their credibility; and prove <u>Monell</u> liability; and (ii) the court improperly applied the balancing test found in Federal Rule of Evidence ("Fed. R. Evid.") 404(b) to determine that the risk of prejudice to the Defendants in disclosing certain post-trial records outweighed the likelihood that such disclosure would yield admissible impeachment material.

The Defendants oppose the motion and argue that the Underlying Order is sound and should be upheld.  The Court will now address the parties' contentions.

## II.    Discussion

## A.    The Applicable Legal Standards

Fed. R. Civ. P. 72 provides, in relevant part, as follows:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a).

As this statutory language makes clear, and as the Plaintiff in this case acknowledges, "a magistrate judge's ruling on non-dispositive pretrial matters should not be disturbed by the district judge absent a determination that such findings were 'clearly erroneous or contrary to law.'" Koumoulis v. Indep. Fin. Mktg. Grp., 29 F. Supp. 3d 142, 145 (E.D.N.Y. 2014) (citing 28 U.S.C. § 636(b)(1)(A)).

It has been recognized in this district that "[m]atters involving pretrial discovery generally are considered nondispositive of the litigation and are subject to the more lenient 'clearly erroneous' standard." United States v. 281 Syosset Woodbury Rd., 862 F. Supp. 847, 851 (E.D.N.Y. 1994) (quoting Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir.), cert. denied, 498 U.S. 846, 111 S. Ct. 132, 112 L. Ed. 2d 100 (1990)), aff'd, 71 F.3d 1067 (2d Cir. 1995). In this regard, "[t]he Supreme Court has stated that '[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence

is left with the definite and firm conviction that a mistake has been committed.' " 281 Syosset Woodbury Rd., 862 F. Supp. at 851 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed 746 (1948)).

The moving party's burden under Rule 72 is a heavy one, and the highly deferential standard "imposes a heavy burden on the objecting party and only permits reversal where the magistrate judge abused h[er] discretion." Ahmed v. T.J. Maxx Corp., 10-cv-3609, 2015 U.S. 62001, at *15-*16 (E.D.N.Y. May 11, 2015) (Spatt, J.). "Similarly, under the 'contrary to law' standard of review, a district court may reverse a finding only if it finds that the magistrate 'failed to apply or misapplied relevant statutes, case law or rules of procedure." Id. (internal quotation marks and alterations omitted) (quoting Garcia v. Benjamin Grp. Enter. Inc., 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011)).

## B. As to Whether the Underlying Order is Clearly Erroneous or Contrary to Law

The Plaintiff asserts that Judge Tomlinson's decision to deny discovery into post-arrest matters including suspensions, internal investigations, disciplinary charges and related audiovisual evidence, constituted a clear error and was contrary to law. This Court disagrees.

In reaching her decision in the Underlying Order, Judge Tomlinson utilized the appropriate standard for determining the scope of pretrial discovery under Fed. R. Civ. P. 26, specifically recognizing that this standard is "very broad" and that "the information sought need not be admissible at trial to be discoverable." Underlying Order at 8-9 (internal citations omitted). Applying this standard, the

court relied upon a pair of cases originating in this district for the proposition that records relating to prior instances of misconduct could lead to admissible evidence. See Pacheco v. City of New York, 234 F.R.D. 53 (E.D.N.Y. 2006) and Frails v. City of New York, 236 F.R.D. 116 (E.D.N.Y. 2006). However, the Court noted that the Plaintiff had failed to provide any authority to support his assertion that records relating to subsequent instances of police misconduct are also relevant.

The Court's independent research into this subject reveals that the question of the discoverability of "subsequent acts" evidence in § 1983 cases is closer than the Underlying Order might suggest.

For example, in Barrett v. City of New York, 237 F.R.D. 39 (E.D.N.Y. 2006), a court in this district held that documents and information relating to "investigations that post-date the filing of the current action could be relevant [in a civil rights] case and should be disclosed." 237 F.R.D. at 41. The Court in that case agree[d] with the defendants' assertion that complaints which post-date the subject incident would not be relevant to demonstrate notice to the defendant city," but nevertheless held that "post-incident investigations regarding a police officer defendant in a section 1983 case may be 'relevant to issues of pattern, intent, and absence of mistake.' " Id. (quoting Moore v. City of New York, 05-cv-5127, 2006 U.S. Dist. LEXIS 24307, at *1-*2 (E.D.N.Y. Apr. 27, 2006)). Accordingly, the court concluded that "complaints [of officer misconduct] should not be barred from discovery simply because they concern events that occurred after the subject incident." Id. However, although the date of the complaint alone should not

preclude the discovery of such evidence, the court held that such records are not discoverable under Rule 26 if they are "wholly unrelated to the plaintiff's claims" of false arrest and related constitutional violations. Id. at *40.

A similar result was reached in Wisniewski v. Claflin, 05-cv-4956, 2007 U.S. Dist. LEXIS 27850 (E.D.N.Y. Apr. 16, 2007), where another court in this district considered whether to compel the production of police officers' discipline records pertaining to events that occurred subsequent to the events at issue in that case. In analyzing the relevance of such documents, the court specifically noted that they "involve[d] similar allegations" to those at issue in the case and, therefore, were discoverable under Rule 26. Id. at *13-*14.

These cases make clear that courts in this district have previously granted civil rights plaintiffs discovery into similar acts of alleged misconduct, even if those acts post-dated the events at issue in the case. In this regard, the Plaintiff's point of contention, namely, the "temporal line" drawn by Judge Tomlinson, is arguably valid. As the court in Barrett explained, the simple fact that similar bad acts by the Defendants allegedly occurred subsequent to the Plaintiff's July 2009 arrest is, in and of itself, insufficient to preclude discovery of such evidence.

However, the flaw in the Plaintiff's reasoning is that the analysis does not end there. Cf. United States v. Ramirez, 894 F.2d 565, 569 (2d Cir. 1990) ("Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility. Rather than adopt a rigid approach, we leave it

to the district court to exercise its discretion in reaching determinations about relevancy . . ." (internal citation omitted)).  As the caselaw outlined above also makes clear, Rule 26 precludes discovery into evidence of subsequent acts if they are "wholly unrelated" to the events giving rise to the § 1983 claim.  See Barrett, 237 F.R.D. at 40; Wisniewski, 2007 U.S. Dist. LEXIS 27850, at *13-*14; see also Malsh v. New York City Police Dep't, 92-cv-2973, 1995 U.S. Dist. LEXIS 4663, at *6-*7 (S.D.N.Y. Apr. 11, 1995) (permitting discovery into complaints and disciplinary actions post-dating the incident at issue in the lawsuit where the subject discovery involved the defendant police officer using the same racial epithet on a subsequent occasion that he was alleged to have used with regard to the plaintiff).

Relevant here, Judge Tomlinson appropriately noted that the scope of this type of discovery " 'is determined in large measure by the allegations in the pleading.' "  Underlying Order at 11 (quoting 287 Franklin Ave Residents' Ass'n v. Meisels, 11-cv-976, 2012 U.S. Dist. LEXIS 72855, at *15 (E.D.N.Y. May 24, 2012). With this principle in mind, the court determined that the nexus between the subject matter of the discovery sought – namely, Lieutenant Kiernan's suspension for various acts of misconduct, including making false statements to Internal Affairs, and Officer Sickles' dependency on prescription drugs – and the facts giving rise to the Plaintiff's complaint – namely, that the Defendants falsely arrested and imprisoned him because they disapproved of his relationship with Tara – was too attenuated to pass Rule 26 muster.  Therefore, in her discretion, Judge Tomlinson

found that the discovery the Plaintiff sought was not relevant to his claims in this case, irrespective of the time period covered. See, e.g., Underlying Order at 11-12 ("There is no allegation that the deprivation of Plaintiff's constitutional rights was caused by or in any way connected to possible drug abuse by P.O. Sickles or Lt. Kiernan's purported failure to properly supervise Sickles. . . . [Those acts] are not similar to Plaintiff's claims that he was falsely arrested due to his relationship with Tara Tully"). This decision was well within the discretion of the magistrate judge.

The Court is not persuaded by the Plaintiff's assertions, unaccompanied by citations to legal authority, that "[e]vidence of Kiernan's failure to supervise Sickles in anyway [*sic*] and at any time is relevant" and that "[i]t does not matter whether it was in connection with Sickles' arrest of Plaintiff because he was dating Tara Tully or while Sickles was abusing drugs on duty." Pl. Memo of Law at 18. On the contrary, Judge Tomlinson possesses broad discretion to determine whether, on the facts and circumstances of this case, the subject of disciplinary charges, internal investigations, and related activities post-dating the Plaintiff's arrest are "wholly unrelated" to the allegations in the pleading.

Moreover, the issue of whether this Court would have reached the same conclusion is not relevant. In this posture, the province of this Court is not to substitute its own judgment for that of the magistrate judge, but rather to apply the highly deferential standard outlined above and determine whether Judge Tomlinson abused her discretion. See Ahmed, 2015 U.S. 62001, at *15-*16. The Court now answers that question in the negative, finding, based on the discussion

above, that Judge Tomlinson's reasoning has appropriate support in the relevant caselaw. The Plaintiff has not established otherwise and, therefore, his instant motion is denied.

In reaching this conclusion, the Court specifically rejects the Plaintiff's contention that the discovery sought here should be allowed because it is likely to yield admissible impeachment evidence. As noted above, Judge Tomlinson concluded that "the risk of possible prejudice to the Defendants resulting from the disclosure of information about subsequent police misconduct *unrelated to this litigation* outweighs any prospect that Plaintiff may discover impeachment evidence that is actually admissible." Underlying Order at 12-13 (emphasis supplied). In this regard, the Court's discussion, above, applies with equal force. It is clear that Judge Tomlinson exercised her discretion to disallow discovery into this potential impeachment evidence because it was "unrelated to this litigation." There is no basis to disturb this determination. See Katt v. New York City Police Dep't, 95-cv-8283, 1997 U.S. Dist. LEXIS 10014 (S.D.N.Y. July 14, 1997) (declining to permit discovery into complaints of alleged police misconduct that differed in kind from those involved in the civil rights lawsuit and specifically rejecting that such discovery material might be relevant for impeachment purposes).

Accordingly, in the Court's view, the Plaintiff has not demonstrated that the Underlying Order was clearly erroneous or contrary to law, and his motion is now denied.

### III.    Conclusion

For the reasons contained in this opinion, the Plaintiff's motion to set aside

the Underlying Order is denied.

**SO ORDERED**

Dated:          Central Islip, New York
                October 7, 2015          */s/ Arthur D. Spatt*
                                         ARTHUR D. SPATT
                                         United States District Judge