UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------ X

CRAIG J. CHILLEMI,

                    Plaintiff,

        -against-                                    Docket No.
                                                     12-CV-3370 (ADS)(ETB)

THE TOWN OF SOUTHAMPTON, ERIC SICKLES,
JAMES KIERNAN, and THOMAS TULLY,

                    Defendants.

------------------------------------ X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION FOR SUMMARY JUDGMENT




**RUSKINMOSCOUFALTISCHEK** P.C.
*Counselors at Law*

1425 RXR PLAZA
UNIONDALE, NEW YORK 11556-1425

(516) 663-6600

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ..................................................................................1

LEGAL ARGUMENT ......................................................................................10

I.     PLAINTIFF'S FALSE ARREST
CLAIM IS VALID AS THE UNDERLYING
PLEASE WAS INVOLUNTARY AND THUS
NOT PRECLUSIVE ...............................................................10

A. Chillemi's arrest was not privileged as there
was a lack of probable cause.................................................11

B. Plaintiff's guilty plea was involuntary
and thus cannot establish consent to
confinement...........................................................................11

II.    MONELL DOES NOT BAR PLAINTIFF'S CLAIM
AGAINST THE TOWN .........................................................16

III.   NO EQUAL PROTECTION CLAIM IS CLAIMED................18

IV.   PLAINTIFF'S FOURTH AND FIFTH AMENDMENT
RIGHTS WERE VIOLATED AND PLAINTIFF WAS
FALSELY ARRESTED GIVING RISE TO A
§ 1983 CLAIM CLAIMED .....................................................18

V.    LIEUTENANT KIERNAN AND DECTIVE TULLY
ARE PERSONALLY INVOLVED THROUGH THEIR
INDIVIDUAL ACTIONS AND SUPERVISORY CAPACITY ..............20

A. Detective Tully was a high-ranking official in the
STPD and aided in creating a custom and practice
withtin the department that allowed unconstitutional
practices .................................................................................20

B. Lieutenant Kiernan was directly involved in the
Arrest of Mr. Chillemi .........................................................21

i

VI.     DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
        IMMUNITY AS THE PERFORMANCE OF THEIR
        DUTIES WAS NOT REASONABLE AND VIOLATED
        MR. CHILLEMI'S CONSTITUTIONAL RIGHTS...................................21

VII.    CLAIMS AGAINST THE DEFENDANTS ARE
        BROUGHT IN THE INDIVIDUAL CAPACITY
        AND NOT THEIR OFFICIAL CAPACITY ............................................24

VIII.   THE STATUTE OF LIMINTATIONS DOES
        NOT BAR THE CLAIM .........................................................................24

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                                    <u>**PAGE**</u>

*Amnesty America v. Town of West Hartford,*
361 F.3d 113 (2d Cir. 2004)...........................................................................16

*Anderson v. Creighton,*
483 U.S. 635 (1987)......................................................................................21

*Anderson v. Liberty Lobby*, Inc.,
477 U.S. 242 (1986)......................................................................................10

*Beatie v. City of New York,*
123 F.3d 707 (2d Cir. 1997)...........................................................................10

*Bennett v. Cty. of Suffolk,*
30 F. Supp. 2d 353 (E.D.N.Y. 1998) ............................................................10

*Carpenter v. City of New York,*
984 F. Supp. 2d 255 (S.D.N.Y. 2013)......................................................21, 23

*Castanza v. Town of Brookhaven,*
700 F. Supp. 2d 277 (E.D.N.Y. 2010) ..........................................................24

*Colon v. Coughlin,*
58 F.3d 865 (2d Cir. 1995)........................................................................20, 21

*Combs v. City of New York,*
130 A.D.3d 862 (N.Y. App. Div. 2015) .........................................................11

*Escobar v. City of New York,*
2007 WL 1827414 (E.D.N.Y. June 25, 2007) ...............................................24

*Fausto v. City of New York,*
17 A.D.3d 520 (2005) ...................................................................................11

*Felmine v. City of New York,*
2011 WL 4543268 (E.D.N.Y. Sept. 29, 2011) ..........................................22, 23

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982)......................................................................................21

*Hill v. Lockhart,*
474 U.S. 52, 56 (1985)..................................................................................12

*Hurlman v. Rice,*
927 F.2d 74 (2d Cir. 1991)......................................................................22

*Jocks v. Tavernier,*
316 F.3d 128 (2d Cir. 2003)....................................................................11

*Kerman v. City of New York,*
374 F.3d 93 (2d Cir. 2004)......................................................................22

*Lennon v. Miller,*
66 F.3d 416 (2d Cir. 1995)......................................................................22

*Leogrande v. Suffolk Cty.,*
2016 WL 889737 (E.D.N.Y.  Mar. 9, 2016) ...........................................16

*Lynch v. Southampton Animal Shelter Found., Inc.,*
2013 WL 80178 (E.D.N.Y. Jan. 7, 2013),
*adhered to on reconsideration,*
2013 WL 1563468 (E.D.N.Y. Apr. 12, 2013) ........................................17

*McCarthy v. Dun & Bradstreet Corp.,*
482 F.3d 184 (2d Cir. 2007)....................................................................10

*Malley v. Briggs,*
475 U.S. 335 (1986)...........................................................................19, 22

*Monell v. Dept. of Social Services of the City of New York,*
436 U.S. 658 (1978)...........................................................................16, 18

*Owens v. Okure,*
488 U.S. 235 (1989).................................................................................24

*Perez v. City of New York,*
2007 WL 14486 (E.D.N.Y. Jan. 3, 2007) ...............................................19

*Pinto v. Allstate Ins. Co.,*
221 F.3d 394 (2d Cir. 2000)....................................................................10

*Ricciuti v. N.Y.C. Transit Auth.,*
124 F.3d 123 (2d Cir. 1997)....................................................................18

*Singer v. Fulton County Sheriff,*
63 F.3d 110 (2d Cir. 1995)................................................................11, 12

*Singleton v. City of New York*,
632 F.2d 185 (2d Cir. 1980)....................................................................24

*Sorlucco v. N.Y.C. Police Dep't*,
971 F.2d 864 (2d Cir. 1992)....................................................................16

*Thomas v. Roach*,
165 F.3d 137 (2d Cir. 1999)....................................................................22

*Townes v. City of New York*,
176 F.3d 138 (2d Cir. 1998)....................................................................19

*Townesie v. City of New York*,
123 F.3d 707 (2d Cir. 1997)....................................................................10

*Trakansook v. Astoria Fed. Savings and Loan Ass'n*,
2008 WL 4962990 (2d Cir. Nov. 21, 2008)..............................................24

*Tuxedo Conservation and Taxpayers Ass'n v. Town Bd. of Town of Tuxedo*,
213 A.D.2d 655 (2d. Dep't 1995) ............................................................25

*Unger v. Cohen*,
718 F.Supp. 185 (S.D.N.Y. 1989) ......................................................12, 13

*Vivenzio v. City of Syracuse*,
611 F.3d 98 (2d Cir. 2010)......................................................................10

*Williams v. Markel*,
1993 WL 498203 (N.D.N.Y. Nov. 29, 1993) ...........................................12

*Zahrey v. Coffey*,
221 F.3d 342 (2d Cir. 2000)....................................................................18

*Zellner v. Summerlin*,
494 F.3d 344 (2d Cir. 2007)..............................................................21, 22

**STATUTES AND OTHER AUTHORITIES**

42 U.S.C. § 1983 .......................................................................... *passim*

Fed. R. Civ. P. 56(a) ................................................................................10

N.Y. Gen. Constr. Law § 25-a ..................................................................25

## PRELIMINARY STATEMENT

Plaintiff, Craig J. Chillemi, submits this memorandum of law in opposition to the Motion for Summary Judgment filed by defendants, the Town of Southampton (the "Town"), Officer Eric Sickles, Lieutenant James Kiernan, and Detective Thomas Tully (together, "Defendants"). This is a civil rights action arising from a perverse love triangle in which members of the Southampton Town Police Department ("STPD") acted under the color of the law in an attempt to end the relationship between Mr. Chillemi and non-party Tara Tully.

Defendant Officer Sickles sought incessantly to date Ms. Tully. Ms. Tully was the daughter of defendant Detective Tully and the god-daughter of defendant Lieutenant Kiernan. Lieutenant Kiernan was also the Commander of the STPD's now infamous Street Crimes Unit, which handled all of the Town's drug related crimes and investigations. Officer Sickles and Detective Tully were members of the Street Crimes Unit.

Defendants went to great lengths to end Ms. Tully's relationship with Mr. Chillemi. Defendants' attempts culminated in Mr. Chillemi's false arrest in July 2009 which deprived him of his rights under the Constitution and are actionable under 42 U.S.C. § 1983.

## STATEMENT OF FACTS

Mr. Chillemi started dating Tara Tully in or about December 2006. (Chillemi deposition, pp. 13-14; Tara Tully deposition, p. 15). On August 5, 2007, the STPD's Street Crimes Unit arrested Mr. Chillemi along with his housemates. (Kiernan deposition, pp. 14-15; Sickles deposition pp. 15-16; Tara Tully deposition, pp. 27, 28, 31, 70). This 2007 arrest was two years prior to the false arrest at issue here. At the time of his 2007 arrest, Plaintiff was staying at a home on Hilltop Road in Southampton, New York with approximately five other people, including Tara Tully. (Chillemi deposition, p. 24; Tara Tully deposition, p.17). The infamous

1

Street Crimes Unit, including Lieutenant Kiernan and Officer Sickles, raided the house after one of the other people staying at the Hilltop Road residence had made a drug sale to an undercover officer. (Sickles deposition, pp. 12; 15-16; Kiernan deposition, pp. 13-15; Chillemi deposition, pp. 25-26; Tara Tully deposition, pp. 23-24; 26; 27-29; 31; 70). During the raid, Officer Sickles taunted Mr. Chillemi about his relationship with Ms. Tully. (Chillemi deposition, pp. 31; 48). Ms. Tully was not charged with any crime after this incident. (Tara Tully deposition, pp. 27-29; 31; 70). The other individuals at the Hilltop Road residence, including Plaintiff, were arrested and charged. (Kiernan deposition, pp. 14-15; Sickles deposition, pp. 15-16; Tara Tully deposition, pp. 27-29; 31; 70; Declaration of Craig Chillemi executed on November 01, 2016 (hereinafter, "Chillemi decl.," Chillemi decl. ¶ 6).

On or about March 28, 2008, after pleading guilty to criminal sale of a controlled substance and criminal possession of a controlled substance both in the third degree, Mr. Chillemi was sentenced to four years in prison. (Chillemi deposition, pp. 31-34). The other people staying at the Hilltop Road residence only received probation. (Chillemi decl. ¶ 6).

In or about April 2009, Mr. Chillemi was furloughed from prison in order to enter a work release program through the Lincoln Correctional Facility in New York, New York. (Chillemi deposition, pp. 39; 41). Although the Complaint stated that Plaintiff was paroled, that statement is inaccurate. At no relevant time herein was Mr. Chillemi paroled. Rather, he was furloughed in order to participate in the work release program. (Chillemi deposition, pp. 39; 41).

As part of the work release program, beginning on or about April 26, 2009, Mr. Chillemi began working for Ketty-Linda Cleaning Corp. d/b/a Malone Restoration located in Douglaston, New York. (Chillemi decl. ¶¶ 7; 10). Between April 26, 2009 and July 08, 2009, the date of his false arrest by Defendants, Mr. Chillemi never missed a day at work or a nightly curfew at

2

Lincoln Correctional Facility. (Chillemi decl. ¶¶ 8, 10). Mr. Chillemi also never received a negative report from the supervising officer at the Lincoln Correctional Facility. (Chillemi decl. ¶ 9). According to his employer, Mr. Chillemi was a valuable asset. (Chillemi decl. ¶ 10, Exhibit 1, Letter from Malone Restoration).

During that time, Mr. Chillemi continued to date Tara Tully. (Chillemi deposition, p. 42). The individual defendants herein were incensed by Tara Tully's continued romantic relationship with Mr. Chillemi. Moreover, Officer Sickles openly expressed his interest in becoming romantically involved with Ms. Tully. (Chillemi deposition, pp. 31, 48).

Defendants conspired to end Tara Tully's relationship with Mr. Chillemi under pretense and color of law. (Chillemi decl.¶¶ 16, 26). On July 8, 2009, Mr. Chillemi rode in the passenger seat of a rental car driven by Tara Tully from the TGIF restaurant in Riverhead to his friend's home located at 5 South Peninsula Drive. (Chillemi deposition, pp. 42-46; 55-56; Tara Tully deposition, 51-52; Chillemi decl., ¶¶ 13, 14). Shortly after his arrival at his friend's home, while Mr. Chillemi was standing in the driveway, Officer Sickles arrived at the South Peninsula Drive residence in an unmarked police cruiser. (Sickles deposition, pp. 28-29; Chillemi deposition p. 48). Officer Sickles falsely stated to Mr. Chillemi that he was not permitted to drive while on work release. (Chillemi deposition, p. 47). Officer Sickles completely disregarded the interim license Mr. Chillemi had in his possession. (Chillemi decl., ¶ 14). Officer Sickles ticketed Plaintiff for aggravated unlicensed operation of a motor vehicle. (Chillemi decl., ¶ 18).

Officer Sickles used that ticket as a pretext to illegally search Plaintiff in front of Tara Tully. (Chillemi decl., ¶¶ 15, 16). In fact, there was really no search at all. While Officer Sickles was handcuffing Mr. Chillemi for the traffic ticket, he produced a small bag of what appeared to be cocaine without even going into any of Mr. Chillemi's pants pockets. (Chillemi

deposition, p. 48; Tara Tully deposition, pp. 48; 50; 74-75). After the illegal search, Officer

Sickles claimed he found a small quantity of cocaine in Mr. Chillemi's right-side pants pocket.

(Sickles deposition, p. 32; Chillemi deposition, p. 48; Tara Tully deposition, pp. 48; 50; 74-75).

Officer Sickles proceeded to arrest Mr. Chillemi for the Unlicensed Operation of a Motor

Vehicle in the Third Degree and Criminal Possession of a Controlled Substance in the Seventh

Degree. (Chillemi deposition, p. 51). According to the General Traffic Complaint sworn to by

Officer Sickles, Mr. Chillemi (and not Tara Tully) had been driving a gray Nissan on Old

Riverhead Road in Hampton Bays. (Chillemi decl. ¶ 18, Exhibit 2, General Traffic Compliant).

That sworn statement by Officer Sickles was knowingly false, because Mr. Chillemi was not

driving the car. (Chillemi deposition, pp. 44, 55-56; Tara Tully deposition p. 45).

According to the Misdemeanor Information also sworn to by Officer Sickles, at the time

of Mr. Chillemi's arrest for the alleged aggravated unlicensed operation of a motor vehicle, Mr.

Chillemi also allegedly possessed a clear micro zip-lock bag containing a quantity of cocaine,

which was allegedly located in Mr. Chillemi's right-side pants pocket. (Telesca decl. ¶ 2,

Exhibit 8, Misdemeanor Information). That sworn statement by Officer Sickles was also

knowingly false, because Mr. Chillemi did not possess any illicit drugs at the time of his arrest.

(Chillemi deposition, p. 48; Tara Tully deposition, pp. 48; 50; 74-75).

Because Mr. Chillemi was neither operating a Nissan on the evening of July 8, 2009, nor

was he in possession any illicit drugs at the time of his arrest, those two charges were fabricated

by Officer Sickles in concert with Lieutenant Kiernan and Detective Tully in a blatant attempt to

end the relationship between Tara Tully and Mr. Chillemi. (Chillemi deposition, pp. 44, 55-56;

Tara Tully deposition p. 45; Chillemi decl., ¶¶ 11-18, 26). Of course, in furtherance of defendants'

plan to end Tara Tully's relationship with Mr. Chillemi, Lieutenant Kiernan – then Sergeant

4

Kiernan and Commander of the infamous Street Crimes Unit – administered the oath for the General Traffic Complaint and Misdemeanor Information signed by Officer Sickles on July 8, 2009.  (Chillemi decl. ¶ 18, Exhibit 2, General Traffic Compliant, Exhibit 2; Telesca decl. ¶ 2, Exhibit 8, Misdemeanor Information).  Lieutenant Kiernan knew that the statements made by Officer Sickles in the General Traffic Complaint and Misdemeanor Information were knowingly false. (Chillemi deposition, pp. 44, 55-56; Tara Tully deposition p. 45).   Detective Tully also knew that the statements made by Officer Sickles in the General Traffic Complaint and Misdemeanor Information were knowingly false. (Chillemi deposition, pp. 44, 55-56; Tara Tully deposition p. 45; Chillemi decl., ¶¶ 11-18, 26).

Lieutenant Kiernan was aware of Officer Sickles' unconstitutional actions and consciously chose to ignore them, effectively ratifying Officer Sickles' illicit actions.  (Telesca decl. ¶ 3, Exhibit 9, Fax from Kiernan to ADA Steven Kuehhas). Lieutenant Kiernan knowingly and with willful and wanton disregard for Mr. Chillemi's constitutional rights failed and/or refused to remedy the deprivation of Mr. Chillemi's constitutional rights or reprimand Officer Sickles for his false arrest of Mr. Chillemi and, in fact, encouraged Officer Sickles to arrest Mr. Chillemi under false pretenses.  (Chillemi deposition, p. 55). Detective Tully, another officer in a supervisory role for the STPD, knowingly acquiesced to Mr. Chillemi's false arrest with deliberate indifference to the rights deprived by Lieutenant Kiernan and Officer Sickles. (Chillemi deposition, pp. 59-60).  As a result of being arrested while still in the custody of the State, Mr. Chillemi spent three and a half months at the Yapank Correctional Facility awaiting the disposition of the fabricated charges.  (Chillemi deposition, pp. 71-73).

On or about October 29, 2009, the charges arising from Mr. Chillemi's arrest on July 8, 2009 were disposed by the Southampton Justice Court.  (Chillemi deposition 51-52; Chillemi

decl., ¶¶ 19-22).  Mr. Chillemi agreed to a plea bargain based on the false promise that such plea would not affect his furlough or participation in the work release program.  (*Id.*). The charge of Criminal Possession of a Controlled Substance in the Seventh Degree was reduced to the mere violation of unlawful possession of marijuana, which was neither a felony nor a misdemeanor, and the charge of Aggravated Unlicensed Operation of a Motor Vehicle was reduced to Facilitating Aggravated Unlicensed Operation, a mere traffic infraction with no points. (Chillemi deposition pp. 51-52; Chillemi decl. ¶ 19, Exhibit 3, Transcript from the Plea Hearing on October 29, 2009, before the Honorable Edward D. Burke).  Mr. Chillemi was not sentenced to any jail time. (*Id.*). The Southampton Town Justice only imposed a fine of $910.00.  (*Id*)

At the plea hearing, the prosecutor first advised the court of the new agreed upon lesser charges.  (*See* Chillemi decl. ¶ 19, Exhibit 3, Transcript from the Plea Hearing on October 29, 2009, before the Honorable Edward D. Burke).  The prosecutor then only requested that Mr. Chillemi orally waive the ceiling for the marijuana possession charge.  (*Id.*).  Mr. Chillemi's defense attorney, Mr. Ghanayem, only added one point to the colloquy that was of critical significance to Mr. Chillemi: that Mr. Chillemi was accepting the plea based on the affirmative representation that he would be reinstated to the work release program.  (*Id.*).  That representation was confirmed by the prosecutor and not objected to by the court:

> **Mr. Ghanayem (defense attorney):** And Your Honor, I would also like to put on the record that this is a generous disposition and it gives my client [the right] to maintain a work release program, which he has been doing very well in.  We have talked about this with his family and he is very anxious to get back to that.  He has also served four months on this and I believe that went into the negotiation process also.  I just wanted to make sure that I recorded that.
> **Mr. Mashhadian (prosecutor):** That's correct.
> **The Court:** No time served?
> **Mr. Mashhadian:** No.
> **The Court:** Okay.  Your attorney did a very good job. (*Id.*).

6

After the court, the prosecutor, and Mr. Chillemi's defense attorney agreed on the fines for the marijuana violation and the traffic infraction, a scant allocution followed in which no inquiry whatsoever was conducted to determine the voluntariness of Mr. Chillemi's plea. (*Id.*). Mr. Chillemi was merely put to plea and responded, "Guilty" in violation of his right to due process:

> **The Court:** . . . All right, at this time, you had an opportunity to speak with your attorney. It's my understanding that you're going to enter a plea to the two violations with the agreed upon bargain for disposition. How do you plead to the 221.05, as a violation?
> **Mr. Chillemi:** Guilty, Your Honor.
> **The Court:** How do you plead to the 511.0A, as a violation?
> **Mr. Chillemi:** Guilty.
> **Mr. Mashhadian (prosecutor):** And do you waive the ceiling on that violation of marijuana?
> **Mr. Chillemi:** Yes, I do.
> **Mr. Ghanayem (defense attorney):** So waived.
> **The Court:** $325.00 on the 221.05 and $585.00 on the 511.0A. 90 days to pay or 30 days in jail. Good luck to you. Thank you very much.
> **Mr. Chillemi:** Thank you.
> **Mr. Ghanayem (defense attorney):** Thank you.
> **The Court:** Your attorney did a very good job. The rest is up to you, bub. Good luck to you.
> **Mr. Ghanayem (defense attorney):** I will call your mom.(*Id.*).

This colloquy and bare bones allocution demonstrate that no effort was made to determine whether Mr. Chillemi was in fact admitting guilt or making his plea voluntarily. Mr. Chillemi agreed to the pleas based the fundamental misunderstanding of not only himself, but his counsel, the prosecutor, and the judge, that such a plea bargain would not interfere with his furlough or reinstatement to the work release program at the Lincoln Correctional Facility.

On November 2, 2009, the Lincoln Correctional Facility's Time Release Committee ("TRC") conducted a hearing to determine if Mr. Chillemi, an inmate on furlough, should be reinstated to the work release program. (Chillemi deposition, pp. 65, 67-68; Chillemi decl. ¶ 23, Exhibit 4, Transcript from Temporary Release Committee). Contrary to the plea bargain made

on October 29, 2009, the TRC recommended Mr. Chillemi's removal from the work release

program based on his conviction for possession of marijuana and facilitating unlicensed

operation of a motor vehicle.  (*Id.*).  The TRC was under the misimpression that Mr. Chillemi

was arrested at the time of a routine traffic stop rather than as a result of a plot by local police.

(Chillemi deposition, pp. 67-68, 77-78 ).  Dumbfounded by this result, Mr. Chillemi refused to

sign the TRC's review form determination.  (*See* Chillemi deposition, p. 66; Chillemi decl. ¶ 23,

Exhibit 4, Transcript from Temporary Release Committee).  Mr. Chillemi appealed the

determination of the review board and was denied.  (Chillemi deposition, 71;  Chillemi Decl.,¶

25; Chillemi decl. ¶ 25, Exhibit 5, Appeal from Department of Corrections Decision).

      As a direct result of the deprivation of Mr. Chillemi's constitutional rights on July 08,

2009, Mr. Chillemi was removed from the work release program at Lincoln Correctional

Facility, despite his satisfactory performance and his employer's willingness to allow Mr.

Chillemi to return to work if he were reinstated.  (Chillemi deposition 68-71; Chillemi decl. ¶ 10,

Exhibit 1, Letter from Malone Restoration, Exhibit 1).  Mr. Chillemi was remanded to the

Oneida Correctional facility in Rome, New York.  (Chillemi decl., ¶ 24).  He was not released

from prison until on or about December 31, 2010.  (Chillemi decl., ¶ 27).

      During the time after the 2009 arrest, Tara Tully met Officer Sickles at the Hampton

Bays Diner. (Tara Tully deposition, p. 62-63, 72-73).  During this time, Officer Sickles spoke

poorly of Mr. Chillemi and again propositioned Tara Tully for a date. (Tara Tully deposition, p.

62-63, 72-73).   Tara Tully was embarrassed by the way she was treated by Officer Sickles and

the continued propositions of Officer Sickles. (Tara Tully deposition, p. 62-63, 72-73).

      In or about May 2011, the Town hired William Wilson, Jr. as the STPD chief.  After

assuming his position, Chief Wilson ordered a comprehensive review of the police department's

rules and procedures, including those related to the Street Crimes Unit. (Chillemi decl. ¶ 28, Exhibit 6, Sandra Peddie et al., *The Southamton Tapes*, NEWSDAY, http://data.newsday.com/long-island/crime/southampton-police (last visited Oct. 11, 2016)). In the summer of 2011, Chief Wilson disbanded the Street Crimes Unit as a result of the lack of proper oversight. *Id.*

On or about May 4, 2012, Lieutenant Kiernan was suspended without pay for 38 days as a result of thirty-two disciplinary charges in connection with acts of misconduct and malfeasance. (Chillemi decl. ¶ 29, Exhibit 7, Transcript from Temporary Release Committee William Wilson, Jr. v. James Kiernan, Disciplinary Charges and related documents). That suspension was extended for an additional 65 days on or about June 12, 2012. (Chillemi decl. ¶ 28, Exhibit 6, Mark Harrington, *Southampton Oks Longer Suspension for Cop*, NEWSDAY (June 12, 2012 10:07 P.M.), http://www.newsday.com/long-island/suffolk/southampton-oks-longer-suspension-for-cop-1.3778685). At the time that Lieutenant Kiernan was suspended, Officer Sickles was sent to a drug rehabilitation center. (Chillemi decl. ¶ 28, Exhibit 6, Sandra Peddie et al., *The Southamton Tapes*, NEWSDAY, http://data.newsday.com/long-island/crime/southampton-police (last visited Oct. 11, 2016); Chillemi decl. ¶ 29, Exhibit 7, William Wilson, Jr. v. James Kiernan, Disciplinary Charges and related documents). Lieutenant Kiernan, the Commander of the Street Crimes Unit and Officer Sickles' supervisor, was aware of Officer Sickles' drug use and willfully and wantonly failed and/or refused to take corrective action. (*Id.*). As reported by local media, Officer Sickles was also suspended from the STPD on or about July 10, 2012. (Chillemi decl. ¶ 28, Exhibit 6, Brendan J. O'Reilly, *Officer Sickles Suspended Without Pay*, PATCH (July 13, 2012, 08:52 P.M.), http://patch.com/new-york/southampton/officer-sickles-suspended-without-pay).

As a direct result of the lack of proper oversight over the Street Crimes Unit by the Town, Mr. Chillemi's most fundamental constitutional rights were violated. Mr. Chillemi has commenced this action to seek redress under 42 U.S.C. § 1983 for the violation of his civil rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, including the freedom from unreasonable searches and seizures, the freedom from compelled self-incrimination, and the right to due process and equal protection under the law.

## LEGAL ARGUMENT

Summary judgment is a drastic remedy and should be granted only if there is "no genuine issue of a material fact." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). Further, a genuine issue of such material fact exists when "a reasonable jury could return a verdict for the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (*quoting Anderson*, 477 U.S. at 248). Any ambiguities or inferences should be decided in favor of the non-moving party. *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000) (*citing Townesie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir. 1997)). "If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable." *Bennett v. Cty. of Suffolk*, 30 F. Supp. 2d 353, 355 (E.D.N.Y. 1998). Applying this standard, Defendants' Motion for Summary Judgment must be denied.

## I.   PLAINTIFF'S FALSE ARREST CLAIM IS VALID AS THE UNDERLYING PLEA WAS INVOLUNTARY AND THUS NOT PRECLUSIVE

The record has shown a genuine issue of material fact as to the false arrest claim pursuant to § 1983. Plaintiff must show: (1) the defendant intended to confine the plaintiff; (2) the plaintiff

was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Elements one and two are not in dispute. Because Mr. Chillemi's confinement was not voluntary or otherwise privileged, Defendant's motion for summary judgment must be denied.

### A. Chillemi's arrest was not privileged as there was a lack of probable cause

Confinement will only be considered privileged if the defendant had probable cause to arrest the plaintiff. *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003). For this privilege to apply, probable cause must exist at the time of the arrest and not be found through a later search. *See Singer*, 63 F.3d at 118–19. Probable cause is "a question of law, to be decided by the court only where there is *no real dispute as to the facts* or the proper inferences to be drawn therefrom." *Combs v. City of New York*, 130 A.D.3d 862, 863 (N.Y. App. Div. 2015) (*citing Fausto v. City of New York*, 17 A.D.3d 520, 521(2005) (emphasis added)).

The circumstances surrounding the arrest of Mr. Chillemi are rife with issues and contradictory statements. Mr. Chillemi has been firm and unwavering that he was not driving a vehicle prior to his arrest on July 08, 2009. (Chillemi deposition, pp. 44, 55-56; Tara Tully deposition p. 45). Additionally, Mr. Chillemi had an interim license in his pocket that was completely disregarded by Officer Sickles. (Chillemi decl. ¶ 14). Further, Mr. Chillemi was not using, selling, transporting, or carrying drugs at the time of his 2009 arrest. (Chillemi decl. ¶ 11, Tara Tully deposition pp. 48; 50; 71). If Mr. Chillemi was not driving a vehicle, had a valid license, and did not have drugs in his possession, it would be impossible for defendants to establish probable cause for his arrest. Therefore, there factual disputes render summary judgment is improper.

### B. Plaintiff's guilty plea was involuntary and thus cannot establish consent to confinement

Generally, "a person who pleads guilty to, or who has been convicted after trial of, the crime for which he was arrested is barred from recovering damages pursuant to a § 1983 action

11

based upon . . . a claim of false arrest." *Williams v. Markel*, No. 92-CV-1162, 1993 WL 498203, at *5 (N.D.N.Y. Nov. 29, 1993). However, an involuntary plea will not have the same preclusive effect. If a plea was involuntary, then the conviction is invalid. *Unger v. Cohen*, 718 F.Supp. 185, 187-89 (S.D.N.Y. 1989). If a plea is involuntary, there is no conviction established for the arrest and such cannot be held against a plaintiff in a subsequent civil rights claim. *See Unger*, 718 F.Supp. at 187-89. Since Mr. Chillemi's plea was involuntarily, it would be impossible for him to consent to his confinement and the third element of false imprisonment is met. *See Singer*, 63 F.3d at 118.

The voluntariness of a plea "depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Unger*, 718 F.Supp. at 189 (*quoting Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). "To prove ineffectiveness of counsel, plaintiff must demonstrate first that his counsel acted unreasonably in light of prevailing professional standards, and second, that this deficient conduct actually prejudiced." *Id.* at 189. The prejudice requirement is satisfied by "demonstrating a reasonable probability that [the criminal defendant] would not have pled guilty and would have gone to trial in the absence of the ineffective conduct of counsel." *Id.* This is standard is not met and thus Mr. Chillemi's plea was involuntary.

In *Unger*, the court considered Mr. Unger's deposition testimony and the "sparse" record from the plea hearing. *Id.* Mr. Unger expressed in his deposition that his main concern was to avoid returning to jail. *Id.* The court agreed with Mr. Unger's characterization of the plea proceeding as "assembly-line justice." *Id.* Mr. Unger's counsel waived the reading of the charges and Unger's rights, and the allocution on the guilty plea. *Id.* Counsel did not discuss the charges in detail or the circumstances of Mr. Unger's arrest. *Id.* There was no indication that Mr. Unger knew he was admitting any wrongdoing, and the court found it to be "manifestly unfair to assume that [Mr. Unger] understood the consequences of the plea." *Id.* at 190.

12

A criminal defense attorney is required to investigate defenses and advise their client as to the options available before turning to a guilty plea. *See Id.* If not performed, it is impossible to determine that an informed, knowing and voluntarily plea was waived. *Id.* Further, the lack of a plea allocution, the procedural safeguard to insuring a plea is knowing and voluntary, is a significant factor in deeming a plea involuntary. *See id.* "New York state courts generally require, as a matter of federal constitutional law, that the judge accepting a guilty plea conduct some form of colloquy." *Id.* The fairness of the entire procedure is called into question when there is a lack of a proper allocution. *Id.* In *Unger*, it was found that the plea allocution was lacking, Mr. Unger did not admit any wrongdoing and he did not have a clear understanding of the consequences of his plea. *Id.* For this reason, the court deemed the plea involuntary and a § 1983 claim was permissible.

Mr. Chillemi, who was similar to Mr. Unger in that both of them wanted to avoid jail time, Mr. Chillemi only had one concern at his plea hearing: return to the work release program. (Chillemi decl. ¶ 19). Mr. Chillemi agreed to the plea on the false pretense that in exchange for his plea, he would be allowed to return to the work release program. (Chillemi decl. ¶¶ 19, 21). If his counsel, the prosecutor, or the town justice had properly instructed Mr. Chillemi that a guilty plea would mean he could not return to the work release program, Mr. Chillemi would never have agreed to the plea bargain. (Chillemi decl. ¶¶ 19, 21, 22). Mr. Chillemi also experienced the same type of bare bones plea allocution as Mr. Unger.

Defendants claim that because Mr. Chillemi uttered the word "guilty" after of plea negotiations that the case is distinguishable from *Unger*. The record and transcript is completely devoid of any facts that there were long periods of plea negotiations, that Mr. Chillemi understood the effect of a plea deal, that he understood the effect of uttering the word "guilty," or

that Mr. Chillemi understood the statutory citations to which he was pleading guilty. (*See* Chillemi decl. ¶ 19, Exhibit 3, Transcript from the Plea Hearing on October 29, 2009, before the Honorable Edward D. Burke).  Due Process is in place to protect criminal defendants from this exact type of plea allocution and Mr. Chillemi's Due Process rights were violated.  Neither the town justice nor the prosecutor discussed the charges or circumstances surrounding Mr. Chillemi's arrest.  *Id.*  Additionally, the potential negative consequences of his plea agreement were not discussed during the plea allocution.  *Id.*  Instead, the plea allocution that was provided was sparse; the Town Justice merely read the statutory citations.  *Id.*

During Mr. Chillemi's plea hearing, the prosecutor, Mr. Mashhadian, first made an application: (i) to reduce the charge under Penal Law Section 220.03, which is Criminal Possession of a Controlled Substance in the Seventh Degree, to Penal Law Section 221.05, which is Unlawful Possession of Marijuana—a violation and not even a misdemeanor, and (ii) to reduce and amend the charge under Vehicle and Traffic Law Section 0511.01A, Aggravated Unlicensed Operation of a Motor Vehicle, to 0511.A, Facilitating Aggravating Unlicensed Operation—a traffic infraction with no points.  *Id.*

Mr. Chillemi's defense attorney, Mr. Ghanayem, only added one point to the colloquy, yet of critical significance to Mr. Chillemi, that was confirmed by the prosecutor and not objected to by the court that Mr. Chillemi would remain in the work release program:

> **Mr. Ghanayem (defense attorney):** And Your Honor, I would also like to put on the record that this is a generous disposition and it gives my client [the right] to maintain a work release program, which he has been doing very well in.  We have talked about this with his family and he is very anxious to get back to that.  He has also served four months on this and I believe that went into the negotiation process also.  I just wanted to make sure that I recorded that.
> **Mr. Mashhadian (prosecutor):** That's correct.
> **The Court:** No time served?
> **Mr. Mashhadian (prosecutor):** No.

14

> **The Court**: Okay.  Your attorney did a very good job.

*Id.* This affirmative representation at the time of the plea that Mr. Chillemi would be able to

return to the work release program was false.

After the court, the prosecutor, and Mr. Chillemi's defense attorney agreed on the fines

for the violation and the traffic infraction, the defective allocution followed:

> **The Court:** . . . All right, at this time, you had an opportunity to speak
> with your attorney.  It's my understanding that you're going to enter a plea
> to the two violations with the agreed upon bargain for disposition.  How
> do you plead to the 221.05, as a violation?
> **Mr. Chillemi:** Guilty, Your Honor.
> **The Court:** How do you plead to the 511.0A, as a violation?
> **Mr. Chillemi:** Guilty.
> **Mr. Mashhadian (prosecutor):** And do you waive the ceiling on that
> violation of marijuana?
> **Mr. Chillemi:** Yes, I do.
> **Mr. Ghanayem (defense attorney):** So waived.
> **The Court:** $325.00 on the 221.05 and $585.00 on the 511.0A.  90 days t
> to pay or 30 days in jail.  Good luck to you.  Thank you very much.
> **Mr. Chillemi:** Thank you.
> **Mr. Ghanayem (defense attorney):** Thank you.
> **The Court:** Your attorney did a very good job.  The rest is up to you, bub.
> Good luck to you.
> **Mr. Ghanayem (defense attorney):** I will call your mom. (*Id.*).

Neither the court nor the prosecutor or even his own attorney for that matter advised Mr.

Chillemi of his right to a trial in which the prosecution would have to prove beyond a reasonable

doubt that he was guilty of the offenses for which he was charged.  *Id.*  There is no indication

that Mr. Chillemi understood what his guilty plea meant (or its future significance), what rights

he was waiving, or that he was pleading guilty because he was, in fact, guilty.  *Id.*  In other

words, the record does not indicate an admission of factual guilt, i.e., Mr. Chillemi does not state

he was driving a vehicle, or allowed someone with a suspended license to drive a vehicle, nor

does he state he possessed marijuana.  *Id.*  No one discussed the charges in detail or the

circumstances of Mr. Chillemi's arrest.  *Id.*  No effort was made to ascertain the voluntariness of

15

the plea.  Mr. Chillemi was merely put to plea and responded, "Guilty."  Thus, as with Mr.

Unger, it would be manifestly unfair to assume that Mr. Chillemi understood the consequences

of his guilty pleas, which makes his 2009 guilty pleas involuntary and fundamentally unfair.

     In reviewing the transcript it is clear Mr. Chillemi was not provided with effective

counsel and that the bare bones plea allocution did not meet Due Process minimums.  Mr.

Chillemi's plea was involuntary and thus it cannot be said that he consented to his confinement.

At a minimum, there is genuine dispute as to a material fact as to whether Mr. Chillemi's plea

was made voluntarily.  Therefore, Defendants' Motion for Summary Judgment should be denied.

## II.     *MONELL* DOES NOT BAR PLAINTIFF'S CLAIM AGAINST THE TOWN

A municipal entity may be held liable under §1983 when a plaintiff can demonstrate that a

municipality policy or custom caused a deprivation of constitutional rights.  *Monell v. Dep't of*

*Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).  A policy or custom need not be written or

memorialized, but instead can be when behavior is widespread or when there is a failure to

properly train their employees rise to the level of deliberate indifference.  *Leogrande v. Suffolk*

*Cty.*, No. 08CV3088JFBARL, 2016 WL 889737, at \*7 (E.D.N.Y.  Mar. 9, 2016) (*citing Sorlucco*

*v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992).  Municipal liability "requires a causal

connection between the actions of the municipality itself and the alleged constitutional violation

[and] . . . a single action taken by a municipality is sufficient to expose it to liability."  *Amnesty*

*America v. Town of West Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).

In the Town, there existed a policy or custom that allowed constitutional deprivations due to

the lack of proper oversight of the STPD Street Crime Unit.  (*See* Chillemi decl. ¶ 28, Exhibit 6,

Sandra Peddie et al., *The Southamton Tapes*, NEWSDAY, http://data.newsday.com/long-

island/crime/southampton-police (last visited Oct. 11, 2016); Chillemi decl. ¶ 29, Exhibit 7,

William Wilson, Jr. v. James Kiernan, Disciplinary Charges and related documents); *see also*

*Lynch v. Southampton Animal Shelter Found., Inc.*, No. CV 10-2917 ADS ETB, 2013 WL

80178, at *3 (E.D.N.Y. Jan. 7, 2013), *adhered to on reconsideration*, No. CV 10-2917 ADS

ETB, 2013 WL 1563468 (E.D.N.Y. Apr. 12, 2013) (finding judicial notice appropriate for

several articles published in local newspapers). Lieutenant Kiernan was a Commander of the

STPD's Street Crimes Unit and exercised policymaking authority on behalf of the town. *Id.*

Lieutenant Kiernan was aware of Officer Sickles' unconstitutional acts against Mr. Chillemi and

affirmatively ratified them or, at a minimum, chose to ignore them, effectively ratifying Officer

Sickles' illicit actions. (Telesca decl. ¶ 3, Exhibit 9, Fax from Kiernan to ADA Steven Kuehhas;

Chillemi decl. ¶ 18, Exhibit 2, General Traffic Compliant; Telesca decl. ¶ 2, Exhibit 8,

Misdemeanor Information). Further, Detective Tully is another supervisor for the STPD and

acted with deliberate indifference towards the actions of Lieutenant Kiernan and Officer Sickles.

(Chillemi decl. ¶ 28, Exhibit 6, Sandra Peddie et al., *The Southamton Tapes*, NEWSDAY,

http://data.newsday.com/long-island/crime/southampton-police (last visited Oct. 11, 2016);

Chillemi decl. ¶ 29, Exhibit 7, William Wilson, Jr. v. James Kiernan, Disciplinary Charges and

related documents). Lieutenant Kiernan and Detective Tully's indifference of the subordinate

officers allowed there to be a custom and practice within the Street Crimes Unit of the

acceptance of civil rights violations. *Id.*

In addition to the constitutional violations suffered by Mr. Chillemi by the hands of the

STPD, there is a more evidence of this type of behavior. After Mr. Chillemi's arrest, there was

an investigation into the actions and behavior of the STPD's Street Crimes Unit, the unit that

effectuated Mr. Chillemi's arrest. (Chillemi decl. ¶ 28, Exhibit 6, Sandra Peddie et al., *The

Southamton Tapes*, NEWSDAY, http://data.newsday.com/long-island/crime/southampton-police

(last visited Oct. 11, 2016)).  The Town's own police chief disbanded the Street Cries Unit for

lack of proper oversight of the officers acting within the unit.  *Id.*  Lieutenant Kiernan pled guilty

to *inter alia* making false statements to Internal Affairs Investigators. (Chillemi decl.,¶ 29

Exhibit 7, William Wilson Jr. v. James Kiernan, Disciplinary Charges and related documents).

Thus there is a valid claim for *Monell* liability on the part of the Town and Summary Judgment is

improper.

### III.   <u>NO EQUAL PROTECTION CLAIM IS CLAIMED</u>

Defendants' motion for summary judgment as to the purported Equal Protection claim

must fail as no Equal Protection violation was alleged.

### IV.   <u>PLAINTIFF'S FOURTH AND FIFTH AMENDMENT RIGHTS WERE VIOLATED AND PLAINTIFF WAS FALSELY ARRESTED GIVING RISE TO A § 1983 CLAIM</u>

The Second Circuit has clearly defined the "right not to be deprived of liberty as a result

of the fabrication of evidence by a government officer acting in an investigating capacity."

*Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000).  Mr. Chillemi was placed back into prison

due to the illegal stop and fabrication of evidence by the STPD. Mr. Chillemi has a clearly

defined right under § 1983 and thus Summary Judgment is improper.

The Second Circuit has held that where a law enforcement official fabricates evidence in

their investigatory role and it is at least foreseeable that the evidence would later be used with the

likely result of indictment or arrest, then there is an adequate deprivation of liberty and causation

is met.  *Zahrey*, 221 F.3d at 354; *see Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir.

1997) ("When a police officer creates false information likely to influence a jury's decision and

forwards that information to prosecutors, he violates the accused's constitutional right . . . and the

harm occasioned by such an unconscionable action is redressable . . . under 42 U.S.C. § 1983");

*see Malley v. Briggs*, 475 U.S. 335, 346 n. 9 (1986). Officer Sickles falsely claimed that Mr. Chillemi was driving the vehicle and then planted narcotics evidence onto Mr. Chillemi, the STPD also fabricated statements of self-incrimination. This falls squarely into the constitutional deprivation required under 42 U.S.C. § 1983.

The case at bar is not merely a Fourth Amendment violation case but also has the added claim of false arrest. The Defendants' heavily rely on *Townes v. City of New York*, 176 F.3d 138 (2d. Cir. 1998). However that case is inapplicable. *Townes* was a case where the plaintiff did not allege conduct "tantamount to … false imprisonment, but only alleged a violation of [the] fourth amendment right to be free from unreasonable search and seizure." *Perez v. City of New York*, No. 01CV5384(SLT)(MDG), 2007 WL 14486, at *14 (E.D.N.Y. Jan. 3, 2007) (*citing Townes*, 175 F.3d at 147). This Court in *Perez*, found *Townes* was wholly inapplicable for claims to recover under the theory of malicious prosecution or false arrest. *Perez*, 2007 WL 14486, at *14. Therefore, *Townes* is inapplicable to the case at hand.

Mr. Chillemi had the right to be free from an illegal seizure without a warrant and without probable cause. Further, after a stop had been made, Mr. Chillemi had the right to be free from the fabrication of evidence. The stop that led to the search of Mr. Chillemi's person and the fabrication of evidence is in direct contravention to the United States Constitution and the law of this Circuit.

Furthermore, the allowance of the non-coerced statements under the Fifth Amendment is only applicable if the Defendant in-fact made the statements claimed. Mr. Chillemi has not alleged coercion or torture because such allegations are unnecessary. Mr. Chillemi never made the statements that are currently being used against him. (Chillemi decl. ¶ 17). There is a

genuine dispute of a material fact as to what was said to the Defendants and what they may have fabricated in their report. Thus summary judgment should be denied.

### V. LIEUTENANT KIERNAN AND DETECTIVE TULLY ARE PERSONALLY INVOLVED THROUGH THEIR INDIVIDUAL ACTIONS AND SUPERVISORY CAPACITY

Section 1983 explicitly extends liability to "every person who . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983. The "Colon test" allows for the establishment of personal liability of a supervisor on five grounds:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The supervisory defendants directly participated in the constitutional violation, failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred, were grossly negligent in supervising subordinates who committed the wrongful acts against Mr. Chillemi, or acted with a deliberate indifference to Mr. Chillemi's rights.

### A. Detective Tully was a high-ranking official in the STPD and aided in creating a custom and practice within the department that allowed unconstitutional practices

Detective Tully was a high-ranking official in the STPD and was a member of the Street Crimes Unit from 1996 to 1998. (Tully deposition, pp. 8-9). Detective Tully is a supervisor for the STPD and acted with deliberate indifference towards the actions of Lieutenant Kiernan and Officer Sickles. (Chillemi decl. ¶ 26). Detective Tully allowed custom to exist within the Street

Crimes Unit that led directly to the type constitutional violations performed and ratified by
Officer Sickles and Lieutenant Kiernan.

**B. Lieutenant Kiernan was directly involved in the arrest of Mr. Chillemi**

Direct participation in a constitutional deprivation is the clearest method of establishing
personal liability. *Colon*, 58 F.3d at 873. Lieutenant Kiernan was directly involved in the arrest
and processing of Mr. Chillemi. (Telesca decl. ¶ 3, Exhibit 9, Fax from Kiernan to ADA Steven
Kuehhas; Chillemi decl. ¶ 18, Exhibit 2, General Traffic Compliant; Telesca decl. ¶ 2, Exhibit 8
Misdemeanor Information). Lieutenant Kiernan was present at the scene of the arrest and
Lieutenant Kiernan alleges he spoke with Mr. Chillemi. (Kiernan deposition, pp. 21-23); *See
Carpenter v. City of New York*, 984 F. Supp. 2d 255, 268 (S.D.N.Y. 2013). Lieutenant Kiernan
supported and participated in an arrest without probable cause. Therefore, Summary Judgment
should be denied.

**VI.      DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS
THE PERFORMANCE OF THEIR DUTIES WAS NOT REASONABLE
AND VIOLATED MR. CHILLEMI'S CONSTITUTIONAL RIGHTS.**

Qualified Immunity will only shield government officials from civil liability if "their
conduct does not violate clearly established statutory or constitutional rights of which a
reasonable person would have known." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007)
(*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In this case, Mr. Chillemi was deprived
of his constitutional right to be free from a warrantless arrest, without probable cause, and the
fabrication of evidence. Where the right in question is a warrantless arrest without probable
cause, a police officer will only be entitled to qualified immunity if "it was objectively
reasonable for them to believe their acts did not violate those rights." *Zellner*, 494 F.3d at 367
(*citing Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)). Therefore, summary judgment is

21

inappropriate based on qualified immunity, "unless the defendant can show that 'no reasonable jury viewing the evidence in the light most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law'." *Felmine v. City of New York*, No. 09-CV-3768 CBA JO, 2011 WL 4543268, at *10 (E.D.N.Y. Sept. 29, 2011) (*citing Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)).

Defendants will not be entitled to qualified immunity if "it is obvious that no reasonably competent officer would have concluded that" probable cause existed. *Zellner*, 494 F.3d at 367 (*citing Malley v. Briggs*, 475 U.S. 335, 341 (1986)). This is a mixed question of law and fact. *Kerman*, 374 F.3d at 109; *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995). The objective reasonableness of the police officer is to be decided by the court. *Zellner*, 494 F.3d at 367. However, "[a] contention that—notwithstanding a clear delineation of the rights and duties of the respective parties at the time of the acts complained of—it was objectively reasonable for the official to believe that his acts did not violate those rights 'has its principal focus on the particular facts of the case.'" *Zellner*, 494 F.3d at 367 (*quoting Hurlman v. Rice*, 927 F.2d 74, 78–79 (2d Cir. 1991)). If there is a dispute as to the material facts of the case, the matter of whether the officer's conduct was reasonable must be resolved by the fact finder. *Zellner*, 494 F.3d at 367; *see Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

The reason for the initial arrest of Mr. Chillemi was aggravated unlicensed operation of a motor vehicle. (Sickles deposition, p. 31). The record reflects is it impossible for the Defendants to meet their burden to prove that a reasonably competent officer would concluded probable cause existed because Mr. Chillemi was not driving the vehicle. (Chillemi deposition, pp. 44, 55-56; Tara Tully deposition p. 45). Mr. Chillemi states he was merely a passenger and was not driving a vehicle at the time of his arrest. (Chillemi deposition, pp. 44, 55-56). Tara Tully testified

that she was driving the vehicle.  (Tara Tully deposition p. 45).  In contravention, the Defendants are claiming that Officer Sickles saw the Mr. Chillemi driving the vehicle.  (Sickles deposition, pp. 24-28); *see, Felmine*, 2011 WL 4543268, at *10 (finding summary judgment inappropriate based on qualified immunity where most of the material facts leading up to the arrest are in dispute).  Thus, this matter is inappropriate for summary judgment due to clear factual disputes.

Furthermore, Lieutenant Kiernan was directly involved in the arrest and processing of the Plaintiff. Lieutenant Kiernan was present at the scene of the arrest and Lieutenant Kiernan alleges he spoke with Mr. Chillemi.  (Telesca decl. ¶ 3, Exhibit 9, Fax from Kiernan to ADA Steven Kuehhas; Chillemi decl. ¶ 18, Exhibit 2, General Traffic Compliant; Telesca decl. ¶ 2, Exhibit 8, Misdemeanor Information; Kiernan deposition, pp. 21-23).  As a supervisor, it is Lieutenant Kiernan's duty to ensure that his subordinate officers are performing their responsibilities within the confines of the law.  *See Carpenter v. City of New York*, 984 F. Supp. 2d 255, 268 (S.D.N.Y.  2013). Here, Lieutenant Kiernan supported an arrest without probable cause.  Therefore, granting Summary Judgment based on qualified immunity would be inappropriate.

Matters of public record have reflected there was a custom and practice in the department of unconstitutional practice. (Chillemi decl. ¶ 28, Exhibit 6, Sandra Peddie et al., *The Southamton Tapes*, NEWSDAY, http://data.newsday.com/long-island/crime/southampton-police). Since the arrest of Mr. Chillemi, news sources have reported on the actions of the Street Crimes Unit and their mistreatment of those they have arrested. *See e.g., id.*  Lieutenant Kiernan and Detective Tully were both high-ranking supervisors within the department during the time this custom and practice was established.  The lack of regard of the constitutional rights of those who are arrested in Southampton has been taught by supervisor to their subordinates and supervisory

liability is proper.  Therefore, due to the clear factual disputes regarding the underlying factors of the Plaintiff's arrest and the unconstitutional customs and practices promulgated within the department, summary judgment on the issue of qualified immunity must be dismissed.

### VII.   CLAIMS AGAINST THE DEFENDANTS ARE BROUGHT IN THE INDIVIDUAL CAPACITY AND NOT THEIR OFFICIAL CAPACITY

Section 1983 allows for constitutional deprivation claims to be brought against both police officers in their individual capacity and the municipality.  *Escobar v. City of New York*, No. 1:05CV3030-ENV-CLP, 2007 WL 1827414, at *3 (E.D.N.Y.  June 25, 2007), is inapplicable as it states a cause of action will be dismissed against an individual when a claim is also brought against a municipality if the person is solely sued in their official capacity.  In this case, the claims brought are against the Defendants in their individual capacity.  The claims are not brought against the defendants "merely because [they] hold a high position of authority," but because they were personally involved in depriving Mr. Chillemi of his constitutional rights.  *See Id.* at *3; *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 284–85 (E.D.N.Y.  2010).

As discussed *supra*, the Defendants in this case were either *personally* involved in the arrest or were *personally involved* in creating a custom of unconstitutional practice within the Street Crimes Unit.  Therefore, all arguments that these claims are brought *solely* against the Defendants in their official capacity are false and summary judgment should be denied.

### VIII.   THE STATUTE OF LIMITATIONS DOES NOT BAR THE CLAIM

The statute of limitations for a 42 U.S.C. § 1983 claim within New York is three years. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Trakansook v. Astoria Fed. Savings and Loan Ass'n*, No. 07-2224-cv, 2008 WL 4962990 (2d Cir.  Nov. 21, 2008). Likewise, a claim of false arrest under § 1983, must also be brought within three years of the arrest. *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).  Defendants' are incorrect in their assertion that the claim was untimely.

24

Plaintiff's arrest was on July 08, 2009. The usual statute of limitation ending date would be July 08, 2012. However, July 08, 2012, fell upon a Sunday. When a filing is due on a Sunday, General Construction Law § 25-a is implicated. N.Y. Gen. Constr. Law § 25-a (McKinney); *see Tuxedo Conservation and Taxpayers Ass'n v. Town Bd. of Town of Tuxedo*, 213 A.D.2d 655, 655-56 (2d. Dep't 1995). General Construction Law § 25-a states:

> When any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Saturday, Sunday or a public holiday, such act may be done on the next succeeding business day and if the period ends at a specified hour, such act may be done at or before the same hour of such next succeeding business day. . . .

N.Y. Gen. Constr. Law § 25-a; *see Tuxedo Conservation and Taxpayers Ass'n*, 213 A.D.2d at 655-56. Thus, since the statute of limitations for bringing the false arrest claim ended on a Sunday, the next succeeding business day is counted within the time-period to file a claim. N.Y. Gen. Constr. Law § 25-a. The next succeeding business day was Monday July 09, 2012. Thus, since the summons and complaint were filed on July 09, 2012, Mr. Chillemi's claim for false arrest is timely. Thus, the Defendants' Summary Judgment motion must be dismissed.

## CONCLUSION

**Wherefore**, for the foregoing reasons, the defendants' summary judgment motion must be denied in its entirety.

Dated: Uniondale, New York
      November 7, 2016

Respectfully submitted,

RUSKIN MOSCOU FALTISCHEK, P.C.

By: _____/s/_____
Thomas A. Telesca, Esq.
*Attorney for Plaintiff*
1425 RXR Plaza, East Tower, 15th Floor
Uniondale, New York 11556
(516) 663-6600